**Bernard ROBBINS and Lisa French, on behalf of themselves and all others similarly situated, et al., Plaintiffs,**

**v.**

**Maralyn BUDKE, in her official capacity as Acting Secretary of the Health and Environment Department, et al., Defendants.**

No. 89–971–M Civil.

United States District Court,
D. New Mexico.

May 21, 1990.

Nancy Koenigsberg, Peter Cubra, Albuquerque, N.M., Susan Stefan, Mental Health Law Project, Washington D.C., Karl Johnson, P.C., Albuquerque, N.M., for plaintiffs.

Florenceruth Brown, Office of the General Counsel, HED, Santa Fe, N.M., Harold Stratton, Atty. Gen., State of N.M., Santa Fe, N.M., Health and Environment Dept., Ripley B. Harwood, Clifford M. Rees, Sp. Asst. Atty. Gen., Office of General Counsel, Santa Fe, N.M., for defendants.

## MEMORANDUM OPINION AND ORDER

MECHEM, Senior District Judge.

This matter came on for consideration on plaintiffs' motion for a preliminary and permanent injunction, plaintiffs' motion to have this action certified as a class action, and defendants' motion for declaratory judgment. A hearing was held on the application for preliminary injunction on December 6, 7, 20 and 21, 1989. A trial on the merits was advanced and consolidated with the hearing of the application pursuant to Fed.R.Civ.P. 65(a)(2). Having considered the motions, the responses, the evidence, the entire record, the proposed findings and orders of all parties, and being otherwise fully advised in the premises, I find that plaintiffs' request for a preliminary and permanent injunction is well taken in large part and it will be substantially granted. Given the scope of the injunction, I find that certification of a class is unnecessary; therefore, plaintiffs' motion for class certification will be denied. Defendants' motion for declaratory judgment is not well taken and it will be denied.

## Background

Plaintiffs are psychiatric patients at Las Vegas Medical Center (LVMC), the Protection and Advocacy System of New Mexico (P & A), and Mr. James Jackson, P & A's executive director. Defendants are state officials and administrators of LVMC. Plaintiffs allege that the policies and procedures of LVMC that govern P & A's access to patients and records violate the patients' constitutional right of access to the courts as guaranteed by the due process clause of the Fourteenth Amendment and the Protection and Advocacy for Mentally Ill Individuals of 1986, 42 U.S.C. § 10801 *et seq.* (the Act). Plaintiffs also allege violation of P & A's constitutional right of access to LVMC patients, facilities, and records as guaranteed under the First Amendment and the Act.

In 1985, Congress held hearings to examine the care and treatment of institutionalized mentally disabled persons in this country. A significant portion of the hearings specifically described abhorrent conditions and instances of gross abuse and neglect at LVMC, some of which resulted in the death of patients. In response to the documented, widespread abysmal conditions in institutions for the mentally ill, Congress passed the P & A Act. The stated purpose of the Act is to assure that the constitutional and statutory rights of the mentally ill are protected and to assure investigation of abuse and neglect.

To achieve its purpose, the Act established the State P & A Systems with the authority to independently investigate reported or probable instances of abuse and neglect and to pursue administrative, legal, and other appropriate remedies to insure protection of the mentally ill who are either receiving care and treatment, or who have been recently discharged from institutions within the state. The Act does not authorize, and the legislative history makes clear Congress' intent that P & A systems are not to engage in, representing clients in civil commitment proceedings. The Act provides, among other things, that a P & A system shall function independently of any state agency which provides treatment to the mentally ill and shall have access to treatment facilities and records. The Act does not, however, define "access" or "probable cause."

The amount of access afforded to P & A by LVMC in the past has varied significantly. P & A began visiting LVMC patients in 1986. For the first six months, P & A was granted unlimited 24-hour access to patient care and living units and staff. Although there was some disagreement about access to records during this initial period, P & A often received access to records at the same time residents were seen, or in any event, within one to two days. P & A also had access to confidential investigations and incident reports. Defendants made no showing that the 24-hour access afforded to P & A in the past was disruptive or detrimental to patient care.

In May 1987, P & A submitted an unfavorable report regarding conditions at LVMC to the Joint Commission on Accreditation of Health Care Organizations (JCAHO). The JCAHO is an independent organization of health care professionals which promulgates national standards for health care facilities. Upon invitation and for a fee, the JCAHO will inspect a facility to determine compliance with its standards. Accreditation by JCAHO is by no means an assurance that abuse and neglect of patients does not take place in an institution, or that patients' constitutional and statutory rights are being protected. Accreditation by JCAHO means that a facility is capable of providing more than custodial care and is eligible for reimbursement by Medicare and other third-party payers. Accreditation is not mandatory under state law. However, in 1984, Governor Toney Anaya informed the State Health and Environment Department (HED) that if LVMC did not attain accreditation he would have the facility closed. Understandably, LVMC administrators and HED spent considerable efforts and resources to attain accreditation.

P & A's report to JCAHO outlined what P & A perceived as violations of specific enumerated JCAHO standards. Prior to submitting the report, P & A did not dis-

cuss its contents with anyone at LVMC. It must be noted that P & A was acting within its statutory authority in submitting the report. Though it may have been desirable, P & A was not required to notify LVMC of the report and its contents prior to submitting it. JCAHO encourages individuals with information pertinent to accreditation to present it at the time an institution is surveyed. Not surprisingly, given the circumstances, LVMC viewed the submission of the report, without notice and opportunity to address the matters raised, as antagonistic. Notwithstanding P & A's report to JCAHO, LVMC was accredited.

LVMC reacted punitively towards P & A and withdrew all previously agreed upon policies and procedures for P & A access to LVMC patients and records. LVMC then promulgated regulations which required written authorization from the hospital administrator's office before P & A could have access to its clients or the facility. The regulations prohibited P & A access to LVMC residents unless a resident was identified by name and authorization was filed in the patient's medical chart. Residents were also required to sign request forms before they could speak to a P & A advocate.

In July 1988, LVMC administrators further limited P & A access to clients and the facility following P & A's activities on behalf of mentally retarded residents at LVMC, who P & A contended were inappropriately placed there. P & A ultimately won a federal court order mandating LVMC to identify and develop appropriate treatment and habilitation plans for developmentally disabled residents. Under the new access limitations, P & A was required not only to present the specific name of the client that an advocate or attorney wished to see, but also was required to provide written evidence of a complaint or a claim.

Present P & A access to records, patients, facilities, and staff is set out in a March 1, 1989 HED position paper. Under the March 1, 1989 policy, P & A may visit a patient, subject to restrictions for "good cause," and upon "reasonable advanced no-

tice," if P & A has a "legitimate business reason." "Good cause," and "reasonable advanced notice" are not defined. A "legitimate business reason" is defined as applying specifically to P & A and means (1) "a report of suspected abuse and neglect ... of a particular individual"; or (2) "probable cause" to believe that an individual has been abused or neglected; or (3) a request for services by P & A that has been made in writing or by telephone. To establish probable cause, P & A must provide at a minimum the patient's name, a statement of the complaint, and the date of occurrence. If disputed, the issue of probable cause is to be decided by a mutually agreed upon third party.

If a patient is at LVMC for custodial care in the facility's nursing home or long-term care units, access is limited to patients with a mental illness or developmental disability diagnosis with whom P & A has a legitimate business reason to visit as already defined. Of approximately 150 patients cared for in the nursing home or long-term care units of LVMC, approximately five fall within the definitional requirement. All patient visits occur in a location determined by LVMC to be mutually convenient to the patient and the facility.

The P & A access to patients policy is implemented as follows: (1) a patient requests a visit by P & A; (2) the P & A advocate must notify the hospital administrator of the patient's identity and unit; (3) hospital administration notifies the hospital paralegal; (4) the hospital paralegal notifies the patient's unit; (5) the unit staff and paralegal schedule an appointment; (6) the paralegal notifies the P & A advocate of the appointment time; (7) a staff member escorts the patient to a room in the administration building near medical records where the meeting takes place. The P & A advocate is not permitted to see or speak to clients on the ward unless the client is very ill or the weather is extremely inclement. Additionally, the hospital has, from time to time, determined that it would not be in a patient's "treatment interest" to consult with a P & A advocate or attorney. The March 1, 1989 policy does not define "treatment interest," nor does it set out

any guidelines for making the determination, the duration, or procedure to resolve a dispute about such a determination.

Under the March 1, 1989 policy, P & A may have access to the long-term care facilities at LVMC only to visit the few (approximately five) patients who have a diagnosis of mental illness or developmental disability for legitimate business reasons as already defined. If an area is primarily for the treatment of mentally ill or developmentally disabled patients, P & A may have access:

(1) to interview patients or witnesses in a private meeting room or other location designated by LVMC, provided that the patient or witness consents to the interview. No access is afforded to P & A to investigate complaints of environmental health or safety violations. The present policy provides that LVMC shall investigate allegations of such violations and advise when the problem has been resolved.

(2) to disseminate information about P & A services and patient rights in patient living areas, scheduled during regular business hours, and with advance notice. Presently, information meetings are conducted monthly, but only at the three unlocked living units. During these information meetings, LVMC's staff are continually present. The P & A advocate is not allowed to answer any private questions by patients after these information meetings. The only other means by which LVMC patients are made aware of P & A's services are by LVMC's dissemination of P & A pamphlets and information or by having P & A's phone number posted on the patients' units. Both have been done inconsistently by defendants.

(3) to tour and inspect the facilities upon request, during regularly scheduled visiting hours, and with advance notice. During these pre-scheduled tours, the P & A advocate is accompanied at all times by the LVMC director and is not allowed to speak to patients or staff, nor is the P & A advocate allowed, during such tours, to disseminate P & A pamphlets or explain the purpose and function of P & A to patients.

If a patient is aware of P & A's services and wishes to contact P & A, he or she must request a meeting by phone or letter. If the patient has grounds privileges, a private pay phone is available. If the patient does not have grounds privileges, the patient may use a phone in the unit's dayroom that does not afford any privacy, or disclose who the patient wishes to call and ask a LVMC staff member's permission for the use of a private phone.

Under the March 1, 1989 policy, P & A may have access to "clients'" records. A "client" of P & A is defined as "a person who has requested services of P & A in writing or by telephone *if* there exists a written record of a call in a telephone log...." (Emphasis added.) Either the client or the client's legal guardian must give written consent before a record is released. If the client is less than 14 years old, a parent or guardian must provide consent. LVMC may reject consent if there is a documented clinical judgment that the person who executed consent was not capable of giving informed consent, in which case the court could be asked to appoint a substitute decision-maker.

If a patient is not a client of P & A, the same consent requirements apply *unless* the patient is incapable of informed consent, has no guardian or legal representative, and P & A has either received a complaint regarding the patient, or has probable cause, as already defined, to believe that abuse and/or neglect has occurred. If these conditions are met, P & A may have access to the records of the non-client patient without consent of the patient or guardian. The LVMC policy is largely modeled after § 10805(a)(4) of the Act. However, this last provision in LVMC's policy, as drafted, appears to apply only to P & A non-clients. No such distinction is made in the Act. Whether the distinction in the LVMC policy was intentional or inadvertent, I can find no reason why the proviso should not apply equally to both clients and non-clients of P & A.

As implemented, P & A is required to obtain a patient's written consent for access to records and send the consent to the hospital paralegal. The paralegal checks the patient's file to determine whether the patient has a guardian or treatment guardian. LVMC does not prescribe a time limit in which the paralegal must act. If there is no guardian, the paralegal notes in the patient's chart that P & A may see the record. If there is a guardian, or treatment guardian, the paralegal sends the consent form to the guardian. There is no procedure established for the paralegal to follow up and insure that the forms are returned. The paralegal does not inform P & A when authorization has been granted. Rather, it is the burden of P & A, having already requested access, to contact the hospital administration, repeatedly in some instances, to see if authorization has cleared. The procedure followed by LVMC has caused delays of up to one month for P & A access to a patient's records.

Specifically, plaintiffs ask this court to require defendants to (1) grant P & A access to all treatment units; (2) permit all patients to attend P & A's presentations on legal rights whether on locked or unlocked units; (3) permit clients in all units to receive P & A advocates and attorneys on their residential units; (4) permit P & A to talk with treatment staff about client issues; (5) provide full, immediate access to all records including incident reports, medical referrals, seclusion and restraint logs, which may not be in a client's charts; (6) permit P & A to do its own investigations of abuse and neglect including interviewing staff witnesses, patient witnesses, and reviewing pertinent records; (7) permit clients to set appointments at reasonable hours with P & A advocates and attorneys without LVMC regulation of time and place of visits; (8) post P & A's toll-free telephone number in a conspicuous place on all units; and (9) give all clients meaningful private access to telephones to call P & A.

Largely to the credit of state agencies, officials, and LVMC staff, conditions at LVMC have improved considerably since the 1985 Congressional hearings. Nonetheless, complaints of abuse and neglect continue and require investigation. Defendants argue that they have a legitimate interest in continuing to operate LVMC "according to the autonomous clinical judgment of its medical professionals, and not the dictates of any monitoring organization no matter how important its non-clinical goals or mandates." Defts.' Memorandum of Points & Authorities in Opposition to Motion for Preliminary Injunction (Defts.' Response) at p. 2. Defendants further argue that the present policies and procedures governing access to patients, records, and facilities are in accordance with state and federal law and are reasonable time, place, and manner restrictions that are necessary for the smooth operation and therapeutic environment of the facility. Defendants therefore urge that I declare the present policies and practices of LVMC to be lawful and deny the injunctive relief sought by plaintiffs.

### Requirements for Permanent Injunction

■ It is well established that in order to justify a grant of permanent injunction the movant has the burden of establishing (1) that the court's exercise of equity jurisdiction is proper, *Younger v. Harris*, 401 U.S. 37, 43–44, 91 S.Ct. 746, 750–51, 27 L.Ed.2d 669 (1971); (2) that the movant has succeeded in proving the merits of its case, *Ciba–Geigy Corp. v. Bolar Pharmaceutical Co.*, 747 F.2d 844, 850 (3rd Cir.1984) *cert. denied* 471 U.S. 1137, 105 S.Ct. 2678, 86 L.Ed.2d 696 (1985); and (3) that the balance of equities tips in favor of injunctive relief. *Id.*

### I. Equity Jurisdiction

■ "Equity jurisdiction is proper if (1) the plaintiff has no adequate legal remedy; (2) the threatened injury is real, not imagined; and (3) no equitable defenses preclude jurisdiction." *Northeast Women's Center, Inc. v. McMonagle*, 665 F.Supp. 1147, 1152 (E.D.Pa.1987) (citing 11 C. Wright & A. Miller *Federal Practice and Procedure* §§ 2942–44 (1973)). A legal remedy is inadequate "if the plaintiff's injury is a continuing one where the best

available remedy at law would relegate the plaintiff to filing a separate claim for damages each time it is injured anew." *Id.* Furthermore, "the continuing violation of constitutional rights constitutes irreparable injury," and is, therefore, real. *Walters v. Thompson*, 615 F.Supp. 330, 341 (N.D.Ill. 1985) (citing C. Wright & A. Miller *Federal Practice and Procedure*, § 2948 at 440; *cf. Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 2689–90, 49 L.Ed.2d 547 (1976)).

 Regarding the first two requirements, I find, as discussed more fully below, that defendants' policies and practices violate the plaintiffs' constitutional and statutory rights of access. The nature of the policies and practices of LVMC are such that they affect the ability of P & A to communicate with the patients at LVMC on a day-in and day-out basis. Furthermore, the evidence in this case shows that defendants have used the restriction of access as retaliation for protected activities by P & A. Even if P & A and LVMC enjoyed the best of cooperative working relationships, P & A remains an independent entity. As such, P & A may be compelled, under its federal mandate, to take actions that defendants are not in agreement with. Plaintiffs therefore not only face the very real on-going violation of their right to access, but also face the threat that their access will be curtailed in the future. I therefore find that plaintiffs' injury is real and on-going.

 Regarding the third requirement, defendants argue that injunctive relief should be denied because "P & A seeks equity without having done equity." Defts.' Response at p. 3. Defendants' argument is difficult to follow. However, defendants seem to claim that because P & A does not represent involuntarily committed patients at commitment hearings and other proceedings under the New Mexico Mental Health and Development Disabilities Code (New Mexico Code), P & A has chosen not to avail itself of an opportunity to provide meaningful access to the courts for involuntary patients. Defendants' argument utterly fails to take into account Congress' intent that P & A is not to

engage in representing clients in civil commitment proceedings. Based on my findings that plaintiffs have no adequate remedy at law, have suffered and will continue to suffer real injury, and that the equitable defense raised is without merit, I find that equitable jurisdiction is properly invoked in this case.

## II. Actual Success on the Merits

 Residents institutionalized at LVMC have a constitutional right of meaningful access to the courts. *Ward v. Kort*, 762 F.2d 856 (10th Cir.1985). No minimum requirements have been established which a state must meet in order to provide adequate access. Rather, the court "should focus on whether the individual plaintiff[s] before it [have] been denied meaningful access." *King v. Atiyeh*, 814 F.2d 565, 568 (9th Cir.1987) (citations omitted). P & A also has a protected First Amendment right to communicate and consult with the population it was created to serve. *United Transportation v. Michigan Bar*, 401 U.S. 576, 580–81, 91 S.Ct. 1076, 1079–80, 28 L.Ed.2d 339 (1971).

Plaintiffs claim that LVMC patients' right of access to the courts and P & A's right of access to its clients are being irreparably harmed by defendants' policies and practices. Plaintiffs argue that these policies and practices thwart patients' efforts to contact P & A's attorneys and advocates and discourage some patients from making any effort at all, thereby obstructing P & A from carrying out its federal mandate to provide legal and advocacy services to LVMC patients. Plaintiffs also claim that defendants impermissibly single out P & A in the application of rules and restrictions, which do not apply to other attorneys or to the hospital's advocate.

To determine whether access is meaningful, adequate, and effective, defendants' policies and practices must be viewed in light of the characteristics and needs of the patients, including their need for a therapeutic environment and treatment of their illnesses. LVMC "officials have the right to impose reasonable restrictions on all visitors of the facility." *Mississippi P & A v.*

*Cotten, et al.*, Civ. No. J87–0503(L), Mem. Op'n at 23 (D.Miss. Aug. 7, 1989). However, "[r]egulations and practices that unjustifiably obstruct the availability of professional representation or other aspects of the right of access to the courts are invalid." *Procunier v. Martinez*, 416 U.S. 396, 419, 94 S.Ct. 1800, 1814, 40 L.Ed.2d 224 (1974).

The mentally ill are vulnerable to abuse and neglect because many mentally ill individuals have difficulty recognizing the concept that they have rights and will not necessarily identify even the most egregious abuse as a violation of their rights. Even if cognizant of their rights, many of these individuals have difficulty assessing whether their rights have been violated and may have difficulty identifying P & A as a resource to remedy rights violations. In addition, both the effects of medications and of mental illness may cause confusion and problems with memory, making it difficult to remember and explain possible rights violations after the lapse of several days.

Many mentally ill people have difficulty developing trusting relationships. Some patients, by virtue of their illness and because of personal characteristics unrelated to mental illness, may not be willing to ask questions about their rights publicly or until they have had an opportunity to develop a degree of trust towards the advocate. Even if P & A's phone number is readily available, the combined effects of medication, mental illness, and the passive characteristic of institutionalized people would inhibit many residents from initiating a phone call to a stranger to talk about problems they are having in the institution. It is, therefore, important for an attorney or advocate to have an ongoing relationship with the individual being served.

Furthermore, residents who are willing to initiate such a call are apt to be deterred if facilities for making a private call are not available or if the nature of the call must be revealed to the institution's staff in order to gain access to a private phone. Many institutionalized residents are reluctant or afraid to take actions that might incur the displeasure of staff who control nearly every aspect of their daily life.

Defendants argue that even when these characteristics of the mentally ill are taken into account, the present access afforded to P & A is adequate given the other resources available to patients. Presently, LVMC employs a full-time patient advocate and a paralegal on its staff. The hospital advocate has no legal training. The hospital paralegal arranges for proceedings under the New Mexico Code, sets the dockets for code hearings, and schedules appointments for attorneys and P & A. The New Mexico Code provides that "[a]ll clients shall be represented by counsel at all proceedings under the code." N.M.Stat.Ann. § 43–1–4(A) (1989 Repl.Pamp.). If a patient is unable to retain an attorney, one is to be appointed under the statute. Attorneys who are appointed by the court usually have only one or two days notice before a hearing. Patients in the forensic unit who face underlying criminal charges also have criminal defense attorneys.

Notwithstanding the statutory mandate regarding representation at New Mexico Code proceedings, Judge Jay Harris, who presides over New Mexico Code hearings, testified that patients were usually, but not always, represented by an attorney. Judge Harris also testified that he rarely hears complaints about LVMC at code proceedings. There are several reasons for this. First, the majority of mentally ill individuals before Judge Harris are not LVMC patients at the time of the proceeding. Most are being committed to LVMC from the outside community. The only time an LVMC patient is before the Judge is if the patient's commitment is being reviewed for an extension. Second, raising a complaint about LVMC at a code hearing entails some risk for a patient given the nature of the proceeding. Furthermore, unlike P & A, the attorneys who represent patients in criminal or code proceedings are not charged with the responsibility to investigate abuse and neglect or other rights violations of patients at LVMC. None of the court-appointed attorneys have ever filed a lawsuit alleging violations of patients' rights, even during the period when defen-

dants themselves concede that the care at LVMC was sub-standard.

It is true that as a constitutional matter the state can choose among several methods to assure meaningful access to the courts. *Knop v. Johnson*, 667 F.Supp. 467 (W.D.Mich.1987). However, the right of access of patients to P & A and of P & A to its clients is not only constitutional but also statutory. The Act requires that P & A "have access to facilities in the State providing care or treatment." 42 U.S.C. § 10805(a)(3). Furthermore, in the present case, there is also the question of P & A's constitutional right of access to the patients, which prohibits defendants from singling out P & A in the application of rules and restrictions based on the content of P & A's activities. *Sturm v. Clark*, 835 F.2d 1009, 1015–16 (3rd Cir.1987).

The hospital advocate and paralegal have unlimited access to LVMC facilities, patients, and records. Non–P & A attorneys who represent a patient in a proceeding under the New Mexico Code or an underlying criminal proceeding may see their clients at any reasonable time irrespective of visiting hours. Although non-P & A attorneys usually make appointments to see their clients, no advance notice or appointment is required. When a non-P & A attorney is seeing a client, they are given immediate, complete access to the patient's records.

 I find that defendants' current policies and procedures as written and as implemented thwart the purpose of the Act. Defendants assume that a patient will recognize a rights violation, understand that P & A is an appropriate resource, has ready access to P & A's address or phone number, is willing to disclose to LVMC staff the fact that the patient has a complaint, and will initiate contact with someone who may be a complete stranger. These assumptions are unreasonable given the characteristics of the patient population. The courts have recognized that the characteristics of institutionalized mentally ill individuals affect their ability to have access to the courts and warrant special considera-

tions. *Doe v. Gallinot*, 657 F.2d 1017, 1022–23 n. 7 (9th Cir.1981).

P & A has a legitimate reason to see patients at LVMC by virtue of the Act. While 24–hour, unlimited access is not necessary to accomplish the purpose of the Act, P & A must be permitted to present regular informal patients' rights education to all patients at LVMC who are mentally ill or developmentally disabled. I see no reason why, after such presentations, P & A advocates should not be allowed to have informal discussions with patients or answer their questions. In addition, the P & A advocate should be accessible on a regular basis to those patients who desire information about their rights but who are unable to participate in the formal presentations.

If a patient desires a private meeting with the P & A advocate or attorney, the patient should be accommodated. However, the present seven-step procedure used to schedule private appointments is unnecessarily complicated. Defendants have not shown why it is necessary to notify the hospital administration, the hospital paralegal, and the unit staff of patient appointments. The use of the private meeting room in the hospital administration building is appropriate in those situations where no other private meeting area is available or when the patient prefers it. It is not unreasonable for P & A to give 24–hour notice for the use of the room in most instances. However, meetings between P & A and its clients should not be limited to the administration building if they can take place in other areas and if the meetings are not disruptive to other patients. Additionally, 24–hour notice should not be required if, in the opinion of P & A, a sooner meeting is absolutely necessary.

Regarding P & A's access to the facility, I again find that the present policy and practices of LVMC thwart the purpose of the Act. The present policy specifically denies P & A the ability to investigate complaints about environmental, health, or safety violations at the hospital. P & A's ability to even observe the conditions that

patients are subject to is seriously hindered by the requirement that any tours of the facility take place only with advance notice and only with an administrative chaperon.

In addition, the present practice of not allowing P & A to talk freely with staff members serves no legitimate interest. The staff's first priority must be patient care. Communications with P & A should not disrupt care. However, defendants have not shown that care was disrupted even when P & A had unlimited access. Free communication with the staff would do much to improve cooperation between P & A and LVMC. Communication should be encouraged, not forbidden.

Access to patient records is necessary for P & A to serve its clients, evaluate its clients' concerns, and determine whether a client has a legal claim. Defendants argue that the current access to records policy is required by N.M.Stat.Ann. § 43–1–19 (1989 Repl.Pamp.). The current policy is in accordance with the New Mexico Statute and modeled after 42 U.S.C. § 10805(a)(4). However, as implemented, the LVMC policy imposes restrictions and delays on P & A that defendants do not impose on the hospital advocate, paralegal, or on other attorneys who represent clients. I find defendants' argument disingenuous. "[R]estrictions are reasonable if they are imposed 'without reference to the content of regulated speech, ... serve a significant governmental interest, and ... leave open ample alternative channels for communication.'" *Sturm v. Clark, supra*, at 1015 (citations omitted).

Timely access to records is essential for effective communication between P & A and its clients just as it is for other advocates and attorneys. The fact that defendants have singled out P & A for the imposition of restrictions and delays leads me to conclude that defendants are attempting to regulate the content of P & A's communications, not merely the manner in which they occur.

Defendants claim that the restrictions are necessary to preserve the confidentiality of patient records. The protection of confidentiality is a significant governmen-

tal interest. However, unlike the attorneys to which the restrictions do *not* apply, P & A is required by the Act to maintain the confidentiality of such records "to the same extent as is required of the provider of such services." 42 U.S.C. § 10806(a). I therefore find that the restrictions placed only on P & A, which is already required to maintain confidentiality, do not serve a governmental interest.

Lastly, the delays caused by the current policy and practices precludes P & A from evaluating and acting on a patient's concerns in a timely manner. The delays may prevent P & A from acting within prescribed deadlines or may cause a violation of rights to go unaddressed until it is too late to remedy. I therefore find that there are no other ample channels of communication open between P & A and its clients under the current policy.

### III. The Balance of Equities

As already discussed, the present policy and practices of defendants limit patients' access to the courts and P & A's access to its clients so severely as to make it impossible for P & A to carry out its statutory mandate. I must balance this harm with the potential harm to defendants if plaintiffs get the relief they seek. Defendants claim that patient care and a therapeutic environment will be totally disrupted if P & A's presence at LVMC is not controlled to the extent that it is at present. I am not persuaded that this is true. The fact that, historically, P & A had unlimited access without disrupting patient care or the therapeutic environment only supports my conclusion. Furthermore, limiting access is by no means the only or the most effective way to resolve problems that exist between P & A and LVMC.

On balance, I find that while unlimited access to P & A is neither necessary or desirable, the present policies and practices of defendants are unwarranted. Now, Therefore,

IT IS ORDERED that

1. Defendants' motion for declaratory judgment is denied.

2. Plaintiffs' motion for class certification is denied.

3. This order shall inure to the benefit of all persons who reside at LVMC now or in the future.

4. Defendants are those in their official capacities and those being replaced by their successors in office pursuant to Fed.R. Civ.P. 25(d)(1), their agents, assigns, and those acting in concert with them.

5. Defendants shall in no way impede effective communication between LVMC residents and designated agents of P & A.

6. All residents of LVMC shall have regular, frequent access on their living units to P & A for the purpose of obtaining information on legal rights and self advocacy during regular business hours.

7. P & A staff shall provide their services only to residents who wish such services and those residents who are unable to communicate their wishes regarding P & A services.

8. At no time will P & A schedule meetings with a patient that conflict with a scheduled therapeutic activity unless good cause exists.

9. P & A shall inform the LVMC administrator or his designee when P & A representatives will be present on LVMC grounds. P & A shall not be required to disclose to LVMC the name of a particular person P & A wishes to visit or the purpose of the visit.

10. Defendants shall permit all residents to visit with P & A advocates and attorneys at their residential units. At the discretion of P & A or a resident, such visits may occur in an area that affords privacy, including, but not limited to an area which is designated by LVMC. Whenever possible, P & A shall give defendants 24–hour notice that such a designated area is needed for a patient visit.

11. P & A staff may visit any building, residential unit or facility during regular business hours for informal visits with clients or for observation or monitoring purposes.

12. Defendants shall provide immediate access to all records, including incident reports, medical referrals, seclusion and restraint logs, and internal investigation reports which may not be in residents' charts with informed consent provided by the resident or guardian or as provided by 42 U.S.C. §§ 10805(a)(4) and 10806.

13. Defendants shall post, in the administration building in a location that is accessible to P & A during regular business hours, a list of patients for whom guardians or treatment guardians have been appointed along with the name, address, and phone number of each guardian. P & A may contact a guardian when necessary to obtain consent or discuss patient issues.

14. Defendants shall permit staff to talk openly with P & A about client issues.

15. Defendants shall permit P & A to do its own investigation of abuse and neglect including interviewing staff witnesses, resident witnesses, observing the physical environment and reviewing pertinent records as described above.

16. If P & A receives reports of abuse or neglect, or has probable cause to believe that abuse or neglect may be occurring at times other than business hours or during or at the location of group, recreational, or other out-of-living unit activities, then P & A shall, after notice to defendants, be immediately permitted to engage in a full and complete investigation during those times or at those locations.

17. Defendants shall permit residents to set appointments with P & A advocates and attorneys at times agreeable to both the resident and P & A staff without defendants administering or scheduling the time and place of the appointments unless requested, provided that such appointments do not conflict with scheduled therapeutic activities absent good cause.

18. Defendants shall give all patients meaningful private access to a telephone to call P & A by making a local, toll-free, or collect call without monitoring by, or permission from, LVMC staff.

19. Defendants shall post P & A's rights poster with phone numbers in a con-

spicuous place on each and every residential unit.

20. The policies of defendants which make attorney or advocate-client visitation contingent on "feasibility," "clinical considerations," or "treatment interest" are overly vague and broad and are in violation of both patients' and P & A's First Amendment rights and 42 U.S.C. § 10841(1)(M).

21. A designee from P & A and LVMC shall meet at least once every month to confer in good faith and resolve problems or conflicts that arise regarding interactions between P & A and LVMC personnel. These meetings may be held less frequently if both P & A and LVMC agree.

22. Plaintiffs shall be awarded attorney fees and costs under § 1988.