**DISABILITY LAW CENTER, Plaintiff,**

**v.**

**MILLCREEK HEALTH CENTER, et al., Defendants.**

**No. 2:04CV690 PGC.**

United States District Court,
D. Utah,
Central Division.

Oct. 12, 2004.

Virginia L. Sudbury, Esq., Disability Law Center, Salt Lake City, UT, for Plaintiff.

Robert B. Denton, Esq., Disability Law Center, Steven T. Waterman, Esq., Ray Quinney & Nebeker, Bonnie Thornley, Salt Lake City, UT, for Defendants.

## CORRECTED OPINION AND ORDER

CASSELL, District Judge.

Plaintiff Disability Law Center ("DLC") has filed a motion for a preliminary injunction seeking declaratory judgment and injunction allowing it access to the medical records of a resident of Millcreek Health Center and access to the facility for investigative purposes. Defendant Millcreek Health Center, Michael Daskalas, and Bonnie Thornley ("Millcreek") filed a motion to dismiss the matter for lack of jurisdiction as well as a response to the request

for injunctive relief. The court finds that jurisdiction is proper, but that there is no on-going controversy to be resolved. Accordingly, the case is dismissed as moot.

*Redacted Pleading*

As a preliminary matter, it appears that the full name of a Millcreek· resident has been inadvertently revealed in a pleading. The court places under seal the Declaration of Michael J. Daskalas, dated September 10, 2004, to insure the name of the individual is not made ·a part of the public record in this case. Millcreek is directed to file a redacted version of this pleading by October 6, 2004.

## Background

Plaintiff DLC is a non-profit corporation duly organized under the laws of the State of Utah. It functions as the statewide protection and advocacy agency to protect and advocate for the legal and civil rights of those Utah citizens that have disabilities pursuant to the Protection and Advocacy for Individuals with Mental Illnesses Act ("PAIMI"); the Developmental Disabilities Assistance and Bill of Rights Act ("DD"); and the Protection and Advocacy for Individuals with Traumatic Brain Injuries Act ("PATBI").

Defendant Millcreek is a health care facility/nursing facility certified to participate in the state's Medicaid program and is owned by NMP, Inc. In the Spring of 2004, DLC employees Christina Wong and Virginia Sudbury visited Millcreek. During this visit two Millcreek residents indicated they had "complaints and questions" about their situation at Millcreek.[1] These residents—W.J. and T.K.—signed authorizations to release their records to the DLC.

On April 2, 2004, the DLC sent a letter to Millcreek requesting the records of several Millcreek residents in an effort to investigate complaints the DLC had received from residents.

On April 9, 2004, the DLC received a letter from T.K. which "cancelled" the authorization to release her records.

On April 12, 2004, three employees of the DLC, including Ms. Sudbury, met with T.K. and questioned whether her withdrawal of the release was truly "voluntary." T.K. indicated concern that release of her records would expose her life to unwanted public scrutiny. The DLC then asked a Millcreek employee to confirm their explanation to T.K. to "verify our legal representations."[2]

On May 19, 2004, the DLC received a complaint from J.B., another resident of Millcreek. J.B. complained to DLC advocate Maree Webb that "he wanted to leave and was being kept at Millcreek against his will."

On May 26, 2004, Ms. Sudbury, legal counsel with the DLC, visited with J.B., and was asked to leave by the Director of Nursing at Millcreek, Ms. Bonnie Thornley. Shortly afterwards the DLC decided they needed full access to J.B.'s records to investigate his complaints.

On May 27, 2004, Ms. Kathleen Geary, J.B.'s legal guardian appointed by Elko County, Nevada, called the DLC and asked someone to contact her immediately. Over the next two weeks, Ms. Geary, an attorney in the Elko County District Attorney's Office, and Ms. Sudbury held several telephone conferences. Ms. Sudbury told Ms. Geary she was investigating com-

---

[1]. Memorandum of Points and Authorities in Support of Plaintiff's Motion for Preliminary Injunction, p. 4.

[2]. *Id.* at 5.

plaints "the substance which, under federal mandate, she could not reveal." [3]

In a June 21, 2004 letter, Ms. Geary invited Ms. Sudbury to participate in J.B.'s Care Plan conference. Ms. Sudbury declined and responded that she was "not a social worker." [4]

On June 23, 2004, the DLC received word from Mr. Daskalas that J.B.'s records would be ready on June 28, 2004. Millcreek ultimately did not provide access to J.B.'s medical records.

On July 2, 2004, the DLC received information it deemed credible that Millcreek does not have complaint or incident forms. [5] The DLC also received information that new hires at Millcreek do not receive any training, that aids do not have access to care plans, and that residents of the facility are in jeopardy of being abused and neglected.

On July 27, 2004, the DLC brought the present suit seeking injunctive relief.

On August 26, 2004, Millcreek's counsel confirmed its willingness to comply with the DLC's requests. Millcreek promised:

> To be specific, to the extent Millcreek has patients that are within the jurisdiction of each of the federal statutes set forth in your complaint, Millcreek will provide access as outlined in the applicable acts. Further, Millcreek strives to comply with the provisions of 45 CFR § 51.42 and 45 CRF § 1386.22, which provide an applicable protection and advocacy system access to records and pa-

tient areas of facilities as provided and limited therein. [6]

According to Millcreek, after the DLC's visit, J.B. began removing his wander guard bracelet and struck a Millcreek employee. On September 10, 2004, due in part to these problems, Ms. Geary transferred J.B. to a facility in Burley, Idaho.

## I. Subject Matter Jurisdiction

### A. Mental Illness, Traumatic Brain Injury, and Developmental Disability

Millcreek argues this court lacks jurisdiction because the DLC has not established that J.B. is a person with disabilities, a traumatic brain injury, or that he is mentally ill. This argument points to the dichotomy of the DLC's requests in this case. The DLC seeks access to the *individual* medical records of J.B. The DLC also seeks general unrestricted access to investigate *any* complaints from Millcreek. These two distinct requests are lumped together in the DLC's general request that it receive its "federal statutory rights."

Under PAMII, the DLC may investigate "hospitals, nursing homes, community facilities for individuals with mental illness, board and care homes, homeless shelters, and jails and prisons." [7] Court's have interpreted PAMII's reach to allow investigation of both youth training schools, youth detention centers [8] and prisons. [9] PAMII does not require the DLC demonstrate a threshold showing of mental illness on the part of J.B. to acquire general

---

**3.** *Id.* at 6.

**4.** Declaration of Micheal J. Daskalas, Exhibit B.

**5.** *Id.* at 8.

**6.** Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction, p. 3.

**7.** 42 U.S.C. § 10802(e).

**8.** *Michigan Protection & Advocacy Service, Inc. v. Miller,* 849 F.Supp. 1202, 1207 (W.D.Mich.1994).

**9.** *Protection and Advocacy for Persons with Disabilities v. Armstrong,* 266 F.Supp.2d 303 (D.Conn.2003).

investigatory access to Millcreek.[10] As the District court for the Western District of Kentucky aptly observed:

> Demanding a conclusive, individualized showing of ... mental illness before permitting [access] would reserve to Defendant a gatekeeping function contrary to the specific terms and general purpose of the Acts.[11]

The DLC is plainly authorized by federal statute to investigate claims of abuse or neglect at nursing homes. It is undisputed that Millcreek is a nursing home facility. Accordingly, no additional showing of mental illness on J.B.'s part is required for this court to have subject matter jurisdiction over this case.

### B. Resident of Utah

██ Millcreek also raises the argument that because J.B. is not a resident of Utah, this court does not have jurisdiction under PAMII. PAMII states that the DLC has the authority to "pursue administrative, legal, and other *remedies* on behalf of an individual who—(i) was an individual with a mental illness; and (ii) is a resident of the state." [12] The plain language of the statute discusses the limitations on the DLC's authority to seek remedies, not its investigatory authority.

In investigating allegations of abuse at Millcreek, the DLC would likely encounter individuals who are not residents of the state of Utah. Yet, this does not bar the investigative effort. Under its investigatory authority he DLC may generally review Millcreek's operations, policies, procedures, patient areas, without regard to the status of patients as residents of Utah.

As a result, this court too would have jurisdiction over resulting legal disputes.

### II. Motion to Strike

The parties have filed opposing motions to strike, and both counsel have accurately noted that the supporting affidavits and declarations are rife with impermissible legal opinions. To the extent that any declaration or affidavit includes an impermissible legal opinion, the court will not rely on the opinions.

Ms. Sudbury's affidavit, however, presents a different set of problems. Ms. Sudbury is potentially in the role of both witness and attorney in this case. As discussed at the hearing, the court will permit this dual role for purposes of this case, but encourages the DLC to avoid such dual roles in the future.

### III. Access to Medical Records

██ Turning to the merits of this case, the court has before it a concrete dispute about whether the DLC can obtain access to records of persons (like J.B.) for whom a legal guardian has been appointed. To be sure, the DLC has withdrawn its request for J.B.'s records through the preliminary injunction since his move to Idaho. Both sides to this dispute agree, however, that there are other persons in the same position as J.B. was in before his move. Accordingly, the court has before it a specific dispute regarding records access that it will resolve, will J.B. serving as an illustration of the problem.

The dispute over records access centers on whether J.B.'s guardian should control access to his records or whether the DLC

---

**10.** See *Armstrong,* 266 F.Supp.2d at 314–316; *Miller,* 849 F.Supp. at 1207.

**11.** *Kentucky Prot. & Advocacy Div. v. Hall,* No 3:01–cv–538 H, slip op. at 4, (W.D.Ky. Sept. 24, 2001).

**12.** 42 U.S.C. § 10805(a)(1)(C)(ii).

can obtain access without involving the guardian. The relevant portions of the governing statute state the DLC shall have access to all records of persons without guardians (including person's whose only guardian is the state) as follows:

(B) any individual (including an individual who has died or whose whereabouts are unknown) -

(i) who by reason of the mental or physical condition of such individual is unable to authorize the system to have such access;

(ii) who does not have a legal guardian, conservator, or other legal representative, or *for whom the legal guardian is the State;*

The statute also provides that the DLC shall have access to records of persons with guardians only when the guardian has failed to act:

(C) any individual with a mental illness, who has a legal guardian, conservator, or other legal representative, with respect to whom a complaint has been received by the system or with respect to whom there is probably cause to believe the health or safety of the individual is in serious and immediate jeopardy, whenever -

(i) such representative has been contacted by such system upon receipt of the name and address of such representative

(ii) such system has offered assistance to such representative to resolve the situation; and

(iii) such *representative has failed or refused to act on behalf of the individual* . . . . [13]

Without any law supporting its position, the DLC makes the unique argument that if an individual has a named public guardian, the "State" is really the guardian, and therefore the individuals medical records may be freely accessed by the DLC under the provision for persons without guardians, rather than the more restrictive provision for persons with guardians.

The plain language of the provision does not recognize the public-private distinction urged by the DLC. Instead, the provisions distinguish between those who without guardians, including those who are wards of the state, and those with "a legal guardian, conservator or other legal representative." For those with guardians, the DLC is authorized to access records only where the guardian fails to act.

This case demonstrates quite clearly why the DLC's interpretation of the statute makes no sense. When contacted by the DLC and Millcreek, Ms. Geary actively involved herself in the situation surrounding J.B. She invited the DLC to participate in his Care Plan and discuss any concerns about his care with her directly. At no point did Ms. Geary refuse or fail to act on J.B.'s behalf. However she determined that release of J.B.'s records would not be in his best interests. Here concerns about entangling J.B. in the DLC's investigation of Millcreek were not speculative. There is substantial evidence that, following the DLC's contacts with J.B., he became abusive toward others. Ms. Geary has extensive experience in developing J.B.'s care plan and is answerable to the court in Elko, Nevada. It makes no sense to allow the DLC to second-guess Ms. Geary's determinations, particularly since the DLC (in stark contrast to Ms. Gear) has no knowledge of the specifics of J.B.'s situation.

Accordingly, the court declares that the statute authorizes the DLC to obtain access to records of persons who have a specific guardian, including a state-ap-

---

**13.** 42 U.S.C. 10805(a)(4)(C).

pointed guardian, only where the guardian has failed to act.

### IV. Motion for Preliminary Injunction

 In this action, the DLC also seeks a preliminary injunction requiring Millcreek to comply with its legal obligations under various federal laws and allowing the DLC access to the facility. As the DLC explained:

> This motion seeks to enjoin Defendants from further unlawfully denying the DLC its federal statutory rights to full and meaningful access to individuals with disabilities who are residents at the Millcreek Health Center and to all area where residents with disabilities have access at Millcreek.[14]

Millcreek contends that its agreement to allow to visits by the DLC renders the pending motion for a preliminary injunction moot. The court agrees. After consulting with legal counsel, about its obligations under the statutes at issue here, Millcreek has agreed to allow the DLC the access it seeks. Moreover, there is no indication that the DLC has any on-going difficulties in obtaining access. To issue an injunction on speculation that problems might arise in the future would be inappropriate.

A similar conclusion was reached in *Kentucky Protection and Advocacy Division v. Rocky M. Hall; Kentucky Youth Academy, Inc.*,[15] There, the District Court for the Western District of Kentucky issued declaratory relief, defining the scope of the advocacy group's access to a facility. Because the defendant facility expressed a willingness to abide by the court's inter-

pretation of the relevant federal statute, the court then denied the motion for a preliminary injunction as moot. The same conclusion pertains here.

The court does not find compelling the DLC's arguments for a preliminary injunction under the voluntary cessation doctrine.[16]

### Conclusion

The court DENIES Millcreek's motion to dismiss finding jurisdiction proper. The court DENIES the DLC's motion for a preliminary injunction as MOOT. The Clerk of the Court is directed to CLOSE THIS CASE.

SO ORDERED.

---

**14.** Memorandum of points and Authorities in Support of Plaintiff's Motion for a Preliminary Injunction, p. 1–2.

**15.** *See* Civil Action No. 3:01–CV–588H (W.D.Kent.2001).

**16.** *See Robbins v. Budke,* 739 F.Supp. 1479 (D.N.M.1990).