**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

DISABILITY LAW CENTER,

　　　　　Plaintiff-Appellant,

v.

MILLCREEK HEALTH CENTER;
MICHAEL DASKALAS,
Administrator of Millcreek Health
Center; BONNIE THORNLEY,
Director of Nursing, Millcreek Health
Center,

　　　　　Defendants-Appellees.

No. 04-4268

---

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 04-CV-690-PGC)**

---

Virginia L. Sudbury (DeRae Preston, Robert B. Denton, with her on the briefs),
The Disability Law Center, Salt Lake City, Utah, for Plaintiff-Appellant.

Steven T. Waterman, Ray, Quinney & Nebeker, P.C., Salt Lake City, Utah, for
Defendants-Appellees.

---

Before **SEYMOUR**, **MURPHY**, and **O'BRIEN**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

## I. INTRODUCTION

Disability Law Center ("DLC") seeks review of a declaratory judgment which interpreted DLC's right, under various federal statutes, to access the records of a disabled patient under the care of a named public guardian. There is no live case or controversy before this court, and there was no live case or controversy before the district court. The appeal is **dismissed** and the opinion of the district court is **vacated**.

## II. BACKGROUND

DLC is Utah's statewide protection and advocacy ("P&A") agency for Utah citizens with certain disabilities.[1] As such, federal law authorizes DLC to investigate incidents of abuse and neglect of such persons when the incidents are reported to DLC or when DLC has probable cause to believe such incidents occurred. 42 U.S.C. § 10805(a)(1)(A) (2005). Under the Protection and Advocacy for Mentally Ill Individuals Act ("PAMII"), DLC is entitled to access all records of protected persons who do not have legal guardians or for whom the legal guardian is the state. *Id*. § 10805(a)(4)(B)(ii). If a protected person has a

---

[1]DLC operates as a P&A agency pursuant to the Protection and Advocacy for Mentally Ill Individuals Act, 42 U.S.C. §§ 10801-10851 (2005); the Developmental Disabilities Assistance and Bill of Rights Act, 42 U.S.C. §§ 15001-15115 (2005); and the Protection and Advocacy for Individuals with Traumatic Brain Injuries Act, 42 U.S.C. § 300d-53 (2005). We refer to individuals protected under these statutes as "protected persons."

legal guardian that is not the state, DLC's access to records is more limited; it is entitled to access records only when the guardian fails or refuses to act after DLC contacts and offers assistance to that guardian. *Id*. § 10805(a)(4)(C)(i)–(iii).

In May of 2004, DLC received a complaint from J.B., a patient at Millcreek Health Center ("Millcreek") nursing home facility.[2] A DLC representative visited J.B., but was asked to leave by Millcreek's director of nursing. DLC determined it needed access to J.B.'s records to investigate his complaints. J.B.'s appointed public guardian,[3] however, did not consent to the release of his records, and Millcreek refused to grant DLC access to the records.

After attempts to secure release of J.B.'s records failed, DLC brought suit against Millcreek for injunctive and declaratory relief, seeking access to J.B.'s records and seeking general monitoring access to the nursing home facility. DLC argued it was entitled to access J.B.'s records because J.B. had a guardian who was designated by Elko County, a political subdivision of the State of Nevada. DLC reasoned when the guardian of a protected person is designated by the state or a political subdivision of the state, that person's guardian is the "State" for purposes of § 10805(a)(4)(B)(ii) of PAMII.

---

[2]J.B. told a DLC advocate "he wanted to leave and was being kept at Millcreek against his will."

[3]The guardian, Kathleen Geary, is the Elko County, Nevada Public Guardian. She is an attorney with the Elko County District Attorney's Office and is answerable to the court in Elko, Nevada.

According to Millcreek, after DLC's visit, J.B. began to remove his wander guard bracelet and struck a Millcreek employee. Due in part to these problems, J.B.'s guardian moved J.B. from Millcreek to a care facility in Burley, Idaho. After J.B. was transferred to Idaho, DLC withdrew its request for J.B.'s records. Further, Millcreek agreed to allow DLC access to patients and records when PAMII or other federal statutes mandated such access.

In light of these events, the district court concluded DLC's request for a preliminary injunction was moot. *Disability Law Ctr. v. Millcreek Health Ctr.*, 339 F. Supp. 2d 1280, 1286 (D. Utah 2004). Because Millcreek agreed to allow DLC access to other patients and patient records, the dispute about general monitoring access evaporated. *Id.* The district court did not, however, deem DLC's request for declaratory relief moot. The court instead determined there was

> a concrete dispute about whether the DLC can obtain access to records of persons (like J.B.) for whom a legal guardian has been appointed. To be sure, the DLC has withdrawn its request for J.B.'s records . . . since his move to Idaho. Both sides to this dispute agree, however, that there are other persons in the same position as J.B. was in before his move. Accordingly, the court has before it a specific dispute regarding records access that it will resolve, will [sic] J.B. serving as an illustration of the problem.

*Id.* at 1284. The district court concluded jurisdiction was proper, and went on to treat the merits of the case by addressing § 10805(a)(4)(B)(ii) of PAMII. The court disagreed with DLC's interpretation of PAMII. It concluded the "State"

-4-

was not the protected person's guardian when that person, like J.B., had an appointed public guardian. *Id*. at 1285-86. The court declared PAMII "authorizes the DLC to obtain access to records of persons who have a specific guardian, including a state-appointed guardian, only where the guardian has failed to act." *Id*.

DLC raises two issues on appeal. First, DLC argues § 10805(a)(4)(B)(ii) entitles it to access a protected person's records when that person has a public guardian because, the "State" is that individual's guardian for all practical purposes. Second, whether a guardian is public or private, DLC contends § 10805(a)(4)(C)(iii) entitles DLC to access records when the protected person's guardian refuses to authorize the release of records to DLC and when DLC has received a complaint or has concluded there is probable cause to believe the health or safety of the person is in serious and immediate jeopardy. Millcreek maintains the case and appeal are moot.

## III. ANALYSIS

"Mootness is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction." *McClendon v. City of Albuquerque*, 100 F.3d 863, 867 (10th Cir. 1996); *see* U.S. Const. art. III, § 2, cl. 1. We review *de novo* the question of mootness. *F.E.R. v. Valdez*, 58 F.3d 1530, 1532-33 (10th Cir. 1995).

Federal courts may adjudicate only actual controversies. *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477-78 (1990). "The controversy must exist during all stages of the appellate review. Once such controversy ceases to exist, the action is moot and this court lacks jurisdiction to adjudicate the matter." *United States v. Seminole Nation of Oklahoma*, 321 F.3d 939, 943 (10th Cir. 2002) (citation omitted). "A federal court has no power to give opinions upon moot questions or declare principles of law which cannot affect the matter in issue in the case before it." *S. Utah Wilderness Alliance v. Smith*, 110 F.3d 724, 727 (10th Cir. 1997). An abstract, conjectural, or hypothetical injury is not enough to support jurisdiction. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983).

An exception to the mootness doctrine exists when cases are "capable of repetition, yet evading review." *Murphy v. Hunt*, 455 U.S. 478, 482 (1982); *see also Semimole Nation*, 321 F.3d at 943. The exception arises "when: (1) the duration of the challenged action is too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party . . . [will] be subjected to the same action again." *Seminole Nation*, 321 F.3d at 943 (quotations omitted).

In the instant case, there is no actual controversy between the parties. As the district court acknowledged, DLC withdrew its request for J.B.'s records. Although the court below implicitly recognized there was no longer a controversy

with access to J.B.'s records, it was willing to find a "concrete dispute" because of the purported existence of other persons "in the same position as J.B. was in before his move." *Disability Law Ctr.*, 339 F. Supp. 2d at 1284. Nothing in the record, however, supports the existence of these similarly situated individuals.[4] Nothing indicates DLC has requested records for any Millcreek patient, other than J.B., whose public guardian will not allow DLC access to that patient's records. Because DLC withdrew its request for J.B.'s records, and because DLC's claim embraces no similarly situated individuals, no controversy remains and DLC's purported injury is merely conjectural or hypothetical. DLC's appeal is moot, and its case was moot when the district court rendered its opinion.

DLC contends this case falls within the exception to the mootness doctrine for cases which are "capable of repetition, yet evading review." It claims the case is capable of repetition because it is likely DLC will again challenge a care facility's refusal to release medical records of a person who has a public guardian. DLC also implies future records-access cases would evade review. It notes the Court of Appeals for the Eleventh Circuit determined a P&A agency's requests for records would "evade review because of the need to access records quickly in

_____

[4]Counsel for DLC confirmed at oral argument that the record did not disclose any similarly situated individual at Millcreek.

order to investigate effectively."[5] *Alabama Disabilities Advocacy Program v. J.S. Tarwater Developmental Ctr.*, 97 F.3d 492, 496 n.1 (11th Cir. 1996).

Cases evade review when "the duration of the challenged action is too short to be fully litigated prior to its cessation or expiration." *Seminole Nation*, 321 F.3d at 943 (quotation omitted). For instance, disputes involving abortion evade review because the relatively short duration of human gestation does not allow such matters to be fully litigated before the end of the pregnancy. *See, e.g.*, *Roe v. Wade*, 410 U.S. 113, 125 (1973). Similarly, this court determined challenges to temporary closure orders issued by the Chairman of the National Indian Gaming Commission necessarily evade review because the temporary orders expire or are replaced by permanent orders before the challenges can be fully litigated. *Seminole Nation*, 321 F.3d at 943. In contrast, when a case presents an issue which "does not have an inherent problem of limited duration," the case will not necessarily evade review in future litigation, and the exception to the mootness doctrine does not apply. *Affiliated Ute Citizens of Utah v. Ute Indian Tribe of Uintah and Ouray Reservation*, 22 F.3d 254, 256 n.1 (10th Cir. 1994).

---

[5]The court concluded a health care facility's appeal of a P&A agency's record request was not moot, even though the records had already been released, because the court could effectuate a partial remedy by ordering the P&A agency to return or destroy the records. *Alabama Disabilities Advocacy Program v. J.S. Tarwater Developmental Ctr.*, 97 F.3d 492, 496 (11th Cir. 1996). In a footnote presenting an alternative rationale, the court concluded the dispute was "capable of repetition, yet evading review." *Id*. at 496 n.1.

DLC's challenge of a care facility's refusal to release the records of a protected person does not present an issue with an inherent time limit such that it would necessarily evade review in future litigation. Unlike a pregnancy or a temporary order, a care facility's refusal to release a patient's medical records could last indefinitely. Indeed, in this case, DLC was unable to litigate Millcreek's refusal to release records only because J.B. was transferred out of state, necessitating DLC's withdrawal of its request for records. DLC has not argued such transfers are likely to happen in future disputes.

Nor can DLC's need for speedy access to records justify the application of the exception to the mootness doctrine. If in a future dispute DLC is concerned its case will become moot because events are moving too quickly, it can request expedited review. *See Fischbach v. New Mexico Activities Ass'n*, 38 F.3d 1159, 1161 (10th Cir. 1994) (noting a litigant may expedite the appeal of an adverse ruling when the pace of events threatens to moot the case). In sum, the type of dispute raised in this case does not present "an inherent problem of limited duration that will cause it to evade review in future litigation." *Affiliated Ute Citizens*, 22 F.3d at 256 n.1. Accordingly, the "capable of repetition, yet evading review" exception does not apply.

Because this matter is moot on appeal and was moot at the time the district court rendered its judgment, the district court's opinion and order is vacated. *See*

*Estate of Harshman v. Jackson Hole Mountain Resort Corp.*, 379 F.3d 1161, 1168 (10th Cir. 2004) (vacating lower court's decision after concluding the lower court lacked jurisdiction).

## IV.    CONCLUSION

For the reasons set forth above, the appeal is **dismissed** as moot and the district court's opinion is **vacated**.