**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 31 2002**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellant,

v.

SEMINOLE NATION OF
OKLAHOMA, a Federally Recognized
Indian Tribe,

      Defendant-Appellee.

No. 01-7108

---

**Appeal from the United States District Court**
**for the Eastern District of Oklahoma**
**(D.C. No. 01-CV-35-X)**

---

M. Alice Thurston, Department of Justice, Washington, D.C., (David C. Shilton,
Department of Justice, Washington, D.C.; Thomas L. Sansonetti, Assistant
Attorney General, Washington, D.C.; Sheldon J. Sperling, United States Attorney,
Muskogee, Oklahoma; Linda A. Epperley, Assistant United States Attorney,
Muskogee, Oklahoma; Kevin K. Washburn, William F. Grant, and Sandra J.
Ashton, Washington, D.C., with her on the briefs), for Plaintiff-Appellant.

Gary S. Pitchlynn, (Patrick A. Morse, with him on the brief), Pitchlynn & Morse,
P.A., Norman, Oklahoma, for Defendant-Appellee.

---

Before **KELLY**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and **MURPHY**,
Circuit Judge.

**MURPHY**, Circuit Judge.

## I. INTRODUCTION

Plaintiff, the United States of America, filed this action in federal district court to enforce temporary closure orders issued to Defendant, Seminole Nation of Oklahoma (the "Nation"), by the Chairman of the National Indian Gaming Commission ("NIGC"). Although the government moved for preliminary injunction, the district court notified the parties by order that the hearing on the government's motion would be combined with a trial on the merits of the government's suit. The district court dismissed the government's suit reasoning that the NIGC Chairman exceeded his authority in ordering the closure of the Nation's gaming facilities rather than just the particular games at issue. The government appeals the district court's dismissal of the suit.[1] This court has jurisdiction under 28 U.S.C. § 1291 and **vacates** the district court order for the reasons stated below. Further, the Nation's motion to dismiss this appeal for mootness is **denied**.

---

[1] Because the district court reached the merits of the government's complaint in dismissing the action, any discussion by the district court of the standard for reviewing a motion for preliminary injunction was irrelevant to the disposition of the case.

## II.    BACKGROUND

In 1988, Congress enacted the Indian Gaming Regulatory Act ("IGRA") which provided a comprehensive system to regulate gambling activities on Indian lands.  *See* 25 U.S.C. §§ 2701-2721.  Under IGRA, Indian gaming is divided into three classes: Class I games (social games solely for prizes of minimal value or traditional forms of Indian gaming); Class II games (bingo, including pull-tabs, lotto, punch boards, tip jars, instant bingo, other games similar to bingo, and certain card games); and Class III games (all other gaming).  25 U.S.C. § 2703(6)-(8).  Class I games are not subject to regulation under IGRA.  *Id*. at § 2710(a).  Class II games are permitted under IGRA if the game is conducted in a state that permits Class II gaming for any purpose by any entity and if the NIGC has approved a gaming ordinance adopted by the tribe.  *Id*. at § 2710(b).  Class III games are permitted under IGRA if, in addition to meeting the requirements imposed on Class II games, they are "conducted in conformance with a Tribal-State compact."  *Id.* at § 2710(d).

The NIGC is charged with the development of regulations and administrative enforcement of IGRA.  *Id*. §§ 2705, 2706.  In accordance with the discharge of this duty, the NIGC Chairman is authorized to order the temporary closure of gaming activities and impose civil fines if he determines that any person or tribe is conducting gaming in substantial violation of IGRA.  *Id*. §§

2705(a), 2713(b)(1). Under the NIGC's regulations, a temporary closure order may extend to "all or part of an Indian gaming operation" and is "effective upon service." 25 C.F.R. §§ 573.6(a), 573.6(b).

The Nation operates gaming activities at four gaming facilities in Seminole County, Oklahoma. In an effort to increase revenues from these facilities, the Nation added "coin-operated amusement games," which it characterizes as games of skill. The Nation offered for play one particular coin-operated amusement game known as, "Red Hot Re-Spin."

On May 30, 2000, the NIGC Chairman concluded that the Red Hot Re-Spin machines were impermissible Class III gaming devices and issued a temporary closure order ("May Order") directing the Nation to cease operating these machines. The Nation filed an appeal of the May Order with the NIGC.

After receiving the May Order, the Nation offered for play several new coin-operated amusement machines, in addition to Red Hot Re-Spin, under the following names: "Buffalo Nickels," "Rainbow Reels," "Fantasy Fives," "Pot O Gold," and "Lucky Cherries." On September 12, 2000, the NIGC Chairman determined that these new games were also Class III games. Accordingly, the NIGC Chairman issued a second temporary closure order ("September Order") ordering the Nation to cease all gaming activities in all of its gaming facilities.

-4-

On January 19, 2001, the government filed a complaint in federal district court for enforcement of the May and September closure orders.[2] The government moved for a preliminary injunction. The district court notified the parties by order that the hearing on the government's motion would be combined with a trial on the merits of the government's suit. On February 27, 2001, the district court denied the motion and dismissed the suit reasoning that the NIGC Chairman exceeded his authority in ordering the closure of all the Nation's gaming facilities. The government appeals the district court's dismissal of the suit.

On February 4-6, 2002, a hearing was held before a Presiding Official ("PO") appointed by the United States Department of the Interior's Office of Hearings and Appeals on the Nation's appeals from the May and September Orders. On April 8, 2002, the PO issued a Recommended Decision in which he concluded that the NIGC met its burden of proof with regard to the May Order but failed to meet its burden of proof with regard to the September Order. The PO recommended that the May Order be sustained and the September Order be vacated.

The NIGC reviewed the PO's recommendations. In a written Notice of Decision and Order entered on May 7, 2002, the NIGC adopted the PO's

---

[2] While the parties stated at oral argument that both the May and September Orders are at issue in this appeal, the parties confine their arguments on appeal exclusively to the September Order.

recommendation as to the May Order but rejected the PO's recommendation as to the September Order. The NIGC directed that both the May and September Orders become permanent.

On August 16, 2002, the Nation filed suit in federal district court seeking review of the NIGC's permanent closure order. This case is still pending before the district court.

## III. DISCUSSION

### A. Mootness

The Nation has moved for dismissal under Rule 27 of the Federal Rules of Appellate Procedure, arguing that the government's appeal is moot because the NIGC Chairman's temporary closure orders were superseded by the NIGC's permanent closure order.

Pursuant to Article III of the Constitution, federal courts may adjudicate only actual controversies. *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477-78 (1990); *Fischbach v. N.M. Activities Ass'n.*, 38 F.3d 1159, 1160 (10th Cir. 1994). The controversy must exist during all stages of the appellate review. *Fischbach*, 38 F.3d at 1160. Once such controversy ceases to exist, the action is moot and this court lacks jurisdiction to adjudicate the matter. *Id.* An exception to the mootness doctrine, however, arises when the case is "capable of repetition, yet evading review." *Gannett Co. v. DePasquale*, 443 U.S. 368, 377 (1979)

(quotation omitted); *Fischbach*, 38 F.3d at 1161. This exception applies when: (1) the duration of the challenged action is "too short to be fully litigated prior to its cessation or expiration," and (2) there is "a reasonable expectation that the same complaining party . . . [will] be subjected to the same action again." *Gannett*, 443 U.S. at 377.

The NIGC Chairman's temporary closure orders have been superseded by the issuance of a permanent closure order by the NIGC. Thus, the temporary closure orders are no longer in effect. This case, however, fits the narrow exception to the mootness doctrine for conduct capable of repetition, yet evading review. The NIGC Chairman's temporary closure orders are too short in duration to be fully litigated in court prior to their administrative expiration or replacement by permanent orders. Temporary closure orders, by their very nature, are short in duration. IGRA requires the NIGC to quickly review temporary closure orders and either dissolve them or issue permanent closure orders. 25 U.S.C. § 2713(b)(2) (providing an Indian tribe with the right to a hearing before the Commission to review a temporary closure order within thirty days of its issuance and requiring the Commission to decide whether to dissolve the order or issue a permanent closure order within sixty days of the hearing). The Nation argues, however, the NIGC Chairman's temporary orders are not so short in duration as to require this court to exercise jurisdiction over this appeal. Rather, the Nation

argues, the government's failure to seek an expedited appeal and its multiple requests for additional time to file appellate briefs delayed appellate review until after the issuance of the permanent order. The course of proceedings in *this* appeal, however, are irrelevant. The NIGC's statutory obligation to quickly conduct a hearing within thirty days of the issuance of a temporary order and decide whether to dissolve or make permanent the order within sixty days of the hearing, creates a paradigm in which a temporary order will not remain in effect throughout the appellate process. Accordingly, the NIGC Chairman's temporary closure orders are of a sufficiently limited duration to ordinarily escape appellate review.

The Nation also argues that the *issues* in this appeal are not of a limited duration because they will be litigated in the case involving the permanent closure order. The issue in this appeal is whether the NIGC Chairman's statutory authority to issue temporary closure orders extends to the closure of a tribe's entire gaming operation. The NIGC Chairman's statutory authority, however, is not at issue in an appeal from permanent closure orders because the NIGC, and not the NIGC Chairman, issues permanent closure orders under IGRA. 25 U.S.C. § 2713(b)(2). Accordingly, a district court hearing an appeal from a permanent closure order will consider the NIGC's authority to issue the order and the

NIGC's conclusion that the gaming operation was in substantial violation of IGRA. *See generally id*. at § 2713(c).

To constitute an exception to the mootness doctrine, it is not enough that an issue will escape review because of limited duration. It is also necessary that there be "a reasonable expectation that the same complaining party . . . [will] be subjected to the same action again." *Gannett*, 443 U.S. at 377. Because the district court's denial of injunctive relief was based on the specific facts of this case, the Nation argues, the government has no reasonable expectation that it will bring a substantially similar action for enforcement of a temporary closure order in the future. The Nation also argues that the court should not presume that it will not comply with future temporary closure orders. At oral argument, however, the Nation conceded it would again challenge the scope of the Chairman's authority under IGRA. Accordingly, there is a reasonable expectation that the Nation will again challenge the NIGC Chairman's authority to issue temporary closure orders that apply to all the Nation's gaming facilities.

Therefore, while the NIGC Chairman's temporary orders were superseded by the NIGC's permanent closure order, this court's "jurisdiction is not defeated" because this appeal fits the exception to mootness for conduct capable of repetition, yet evading review. *See id*.

**B.     IGRA**

The district court determined the NIGC Chairman's authority to issue temporary closure orders is limited under 25 U.S.C. § 2713(b)(1) to the closure of individual games.  Accordingly, the district court concluded the NIGC Chairman exceeded his statutory authority by issuing the September Order which required closure of all the Nation's gaming facilities.  The government argues that the NIGC Chairman is authorized under IGRA to issue a temporary closure order applicable to an entire gaming facility and that the district court, therefore, erred in refusing to enforce the September Order.  This court reviews the interpretation of a federal statute *de novo*.  *See Utah v. Babbitt*, 53 F.3d 1145, 1148 (10th Cir. 1995).

In interpreting a statute, this court gives effect to the statute's unambiguous terms.  *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984); *Aulston v. United States*, 915 F.2d 584, 589 (10th Cir. 1990).  "In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole."  *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988).  "[I]f the statute is silent or ambiguous with respect to the specific issue," however, this court defers to the agency's reasonable interpretation of the statute.  *Chevron*, 467 U.S. at 843.

The Nation argues that the NIGC Chairman's authority to issue temporary closure orders is limited to the closure of an individual game. To support its argument, the Nation relies on 25 U.S.C. § 2713(b)(1) which states:

> The Chairman shall have power to order temporary closure of an Indian game for substantial violation of the provisions of [IGRA, NIGC regulations, and tribal regulations approved under IGRA].

While the narrow term "an Indian game" is used in § 2713(b)(1), when read as a whole IGRA unambiguously authorizes the NIGC Chairman to order the temporary closure of entire gaming operations. In § 2705(a)(1), the NIGC Chairman is authorized to "issue orders of temporary closure of *gaming activities* as provided in section 2713(b)." 25 U.S.C. § 2705(a)(1) (emphasis added). Accordingly, the phrases "gaming activities" and "an Indian game" are used interchangeably in reference to the NIGC Chairman's authority to issue temporary closure orders.

Moreover, the NIGC is required by § 2713(b)(2) to review the NIGC Chairman's temporary closure order and either dissolve it or order "a permanent closure of the gaming operation." *Id*. § 2713(b)(2). Because the NIGC can act to either dissolve or make permanent the Chairman's temporary order, the NIGC's permanent closure order is of the same scope as the NIGC Chairman's temporary closure order. The reference in § 2713(b)(2) to a "gaming operation," therefore, is substantially equivalent to the phrase "an Indian game" in § 2713(b)(1).

Finally, the NIGC Chairman is obligated to approve tribal ordinances which, *inter alia*, provide for the protection of public health and safety at gaming facilities. *Id*. § 2710(b)(2)(E) (authorizing the Chairman to approve tribal ordinances which provide that "construction and maintenance of the gaming facility, and the operation of that gaming is conducted in a manner which adequately protects the environment and the public health and safety"). The NIGC Chairman is authorized to enforce such tribal ordinances through the issuance of temporary closure orders. *Id*. § 2713(b)(1). The Nation conceded at oral argument that the NIGC Chairman's authority to enforce such tribal ordinances is derived from § 2713(b)(1). If the NIGC Chairman's authority to issue temporary closure orders was limited to the closure of individual games, he would be unable to carry out this obligation. Accordingly, when § 2710(b)(2)(E) and § 2713(b)(1) are read together, the NIGC Chairman's authority to issue temporary closure orders clearly includes the power to close entire gaming facilities.[3]

---

[3] The Nation argues that the NIGC Chairman is not empowered to close games which are lawful under IGRA. This argument lacks merit. The closure of an entire facility for violation of a safety regulation would necessitate the closure of individual games which are otherwise permissible under IGRA. Such a result is clearly authorized under the language of 25 U.S.C. § 2710(b)(2)(E) and § 2713(b)(1).

Even assuming, *arguendo*, that the statute authorizing the NIGC Chairman to issue temporary closure orders under IGRA is ambiguous,[4] the NIGC's interpretation of the statute as embodied in their regulations is entitled to deference. *Chevron*, 467 U.S. at 843. Under 25 C.F.R. § 573.6, the NIGC Chairman is authorized to issue "an order of temporary closure of all or part of an Indian gaming operation" if the tribe violates certain provisions of IGRA. 25 C.F.R. § 573.6(a). "The operator of an Indian gaming operation [must] close the operation upon service" of the order. *Id*. § 573.6(b). This regulation is a reasonable interpretation of § 2713(b)(1) and, therefore, is entitled to deference under *Chevron*. *See* 467 U.S. at 843.

Accordingly, because the NIGC Chairman is authorized under IGRA to issue a temporary closure order of an entire gaming facility, the district court erred in dismissing the government's action seeking enforcement of the September Order.

---

[4] The Nation conceded at oral argument that § 2713(b)(1) may, in fact, be ambiguous and that the NIGC's reasonable regulations are entitled to *Chevron* deference.

## IV. CONCLUSION

For the reasons stated above,[5] the district court's order is **VACATED.**[6]

Further, the Nation's motion to dismiss this appeal for mootness is **DENIED**.

---

[5] In addition to concluding that the NIGC Chairman exceeded his statutory authority by issuing a temporary closure order relating to all the Nation's gaming facilities, the district court raised, *sua sponte*, the issue of whether the Nation's due process rights were violated. As an additional reason for dismissing the government's suit, the district court determined that the Nation's due process rights were violated. Because resolution of this constitutional issue was unnecessary to the adjudication of the case, the district court abused its discretion in deciding the issue. *See Dept. of Commerce v. United States House of Representatives*, 525 U.S. 316, 343 (1999) (reasoning it was proper to abstain from ruling on the constitutional issue presented in the appeal because a decision could be reached on other grounds). Moreover, the Nation has abandoned this issue on appeal. Accordingly, this court does not have the benefit of appellate briefing on this issue. In light of these circumstances and the conclusion that the district court's opinion be vacated, this court will abstain from adjudicating the merits of this issue.

Because this action was an enforcement action, the only issue properly addressed by the district court was whether the NIGC Chairman had the authority to order the temporary closure of all the Nation's gaming facilities. Accordingly, the district court lacked jurisdiction over other issues raised by the parties, including the classification of the games at issue and the validity of IGRA provisions requiring that tribal-state compacts be obtained prior to engaging in Class III gaming activities. These issues must be raised in an appeal of the NIGC's permanent order. *See* 25 U.S.C. § 2713(c) (conferring jurisdiction over final, permanent orders of the NIGC on the federal district court). Therefore, this court, like the district court, lacks jurisdiction to resolve these issues.

[6] The NIGC Chairman's temporary closure orders have been superseded by the NIGC's permanent closure order and they, therefore, cannot be enforced. Because, as discussed above, the district court erred in dismissing the government's suit and in refusing to enforce the NIGC Chairman's temporary closure orders, this court vacates the district court's order.