**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 26, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

KATIE LANE and SARAH RICE,

      Plaintiffs - Appellants/Cross-
      Appellees,

v.

TODD F. SIMON and STEPHEN E.
WHITE, in their official and
individual capacities,

      Defendants - Appellees/Cross-
      Appellants,

- - - - - - - - - - - - - - - - - - -

STUDENT PRESS LAW CENTER;
THE AMERICAN SOCIETY OF
NEWSPAPER EDITORS; THE
ASSOCIATED COLLEGIATE
PRESS; COLLEGE MEDIA
ADVISERS; COLLEGE
NEWSPAPER BUSINESS AND
ADVERTISING MANAGERS; THE
COMMUNITY COLLEGE
JOURNALISM ASSOCIATION; THE
FOUNDATIONS FOR INDIVIDUAL
RIGHTS IN EDUCATION, INC.; THE
REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS; and THE
SOCIETY OF PROFESSIONAL
JOURNALISTS,

      Amici Curiae.

Nos. 05-3266 & 05-3284

**Appeal from the United States District Court
for the District of Kansas
(D.C. No. 04-CV-4079-JAR)**

Patrick J. Doran, Patrick J. Doran, L.C., Kansas City, Missouri for the Plaintiffs - Appellants/Cross-Appellees.

Cheryl G. Strecker, Senior Associate University Attorney, Kansas State University, Manhattan, Kansas for the Defendants - Appellees/Cross-Appellants.

S. Mark Goodman, Student Press Law Center, Arlington, Virginia, and Adam J. Biegel, Alston & Bird, LLP, Atlanta, Georgia, filed an Amici Curiae brief in support of Plaintiffs - Appellants/Cross-Appellees.

Before **LUCERO**, **McCONNELL**, and **HOLMES**, Circuit Judges.

**LUCERO**, Circuit Judge.

Katie Lane and Sarah Rice are former editors of the <u>Kansas State Collegian</u> ("<u>Collegian</u>"), a daily newspaper affiliated with Kansas State University ("KSU" or "University"). After KSU officials Todd Simon and Stephen White took actions leading to the removal of the <u>Collegian</u>'s advisor, Ronald Johnson, plaintiffs filed suit alleging violations of their First and Fourteenth Amendment rights as well as state law. The district court granted defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6). Lane and Rice now appeal. Because we conclude this case is now moot, we **VACATE** the decision of the district court

and **REMAND** with instructions to **DISMISS**.

**I**

Since its establishment by KSU students in 1896, the Collegian has provided general news coverage in and around Manhattan, Kansas, including the KSU campus. KSU students comprise the staff of the Collegian, and Student Publications, Inc. ("SPI") publishes the paper. Although the board of directors and officers of SPI are in large part affiliated with KSU, SPI is incorporated as a Kansas not-for-profit corporation that is legally distinct from the University.

In Spring of 2004, Lane served as Editor-in-Chief of the Collegian and Rice as its Managing Editor. Johnson, a KSU professor in the A.Q. Miller School of Journalism and Mass Communications, was the Treasurer and Director of SPI from 1989 until 2004. In his capacity as Director, Johnson advised the student editors of the Collegian but did not make final content decisions for the paper. Under Johnson's advisorship, the Collegian won a number of national awards, including Associated Collegiate Press Pacemaker Awards in 1997-98, 1999-2000, and 2000-01. In 2003 and 2004, it won top national prizes from the Columbia Scholastic Press Association and placed first in show at the Spring National College Media Convention.

During Lane and Rice's tenure as editors, campus controversy erupted over the extent of minority news coverage in the Collegian. After the Collegian failed to send a reporter to the Big XII Conference on Black Student Government, held

in Manhattan, Kansas that year, student groups and faculty openly criticized the Collegian's alleged dearth of diversity coverage. Lane and Rice addressed these concerns in two public forums for KSU students, faculty, and administrators. Their responses, however, failed to quell campus criticism, and at the second forum, a KSU associate provost suggested that Johnson no longer serve as Director of SPI. In early April 2004, shortly after the forums, KSU student groups organized a protest rally and march calling for Johnson's removal.

On May 7, 2004, Todd Simon, Chairman of the Board of SPI and Director of the School of Journalism and Mass Communications at KSU, wrote a letter to Stephen White, Dean of the College of Arts and Sciences at KSU, recommending that Johnson not be reappointed as Director of SPI.[1] In his letter, Simon explicitly stated that he did not base his recommendation on the recent controversy over minority news coverage. Instead, he relied largely on a "content analysis" comparing the Collegian to six other college newspapers. After reviewing the results of the content analysis, Simon concluded that the "Collegian's news reporting and writing are demonstrably weaker than news coverage in peer college newspapers." According to the analysis, the Collegian had fewer hard news stories, diversity stories, and sports news stories than the other college papers analyzed. The analysis also showed that the Collegian cited

---

[1] Johnson worked under a series of one-year contracts and was subject to annual reappointment.

fewer sources per article. Because the "sub par scope and quality of news coverage" extended back to 2000, Simon concluded that Johnson's advising, rather than the composition of the student staff, was to blame.

Following Simon's recommendation, White informed Johnson by letter that he was being removed from his position as Director of SPI, effective May 2004, and being assigned additional teaching duties. His salary would remain the same. Neither Simon nor White consulted SPI's Board about whether to reappoint Johnson. The bylaws of SPI, however, provide that: "In the case of split appointments between Student Publications and the A.Q. Miller School of Journalism and Mass Communications, the Board of Student Publications will be appropriately represented in all stages of the search and evaluation process."

Accordingly, on May 20, 2004, the Board of SPI passed a resolution stating that it did "not approve of or consent to . . . attempts by persons or entities other than the Board to remove its Director of Student Publications by means other than by a majority vote of a quorum of the Board." It further resolved that "if the Board chose to vote on the office of Treasurer and Director of Student Publications at a regularly scheduled or special meeting of the Board, a majority of a quorum of the Board would vote to retain Ron Johnson in the office of Treasurer and Director of Student Publications." Notwithstanding this resolution, Simon and White proceeded to remove Johnson from his post at SPI and initiated a search for an interim director.

On July 6, 2004, Lane and Johnson filed a § 1983 action against Simon and White in federal district court. Rice joined as a plaintiff on July 14, 2004. In addition to seeking a declaratory judgment that defendants' actions violated the First and Fourteenth Amendments and Kansas state law, plaintiffs requested an order enjoining defendants from removing Johnson or otherwise interfering with the governance of SPI.

With respect to their constitutional claim, plaintiffs allege that Johnson's removal was motivated by the controversy surrounding minority news coverage and chilled student editors' exercise of their First Amendment rights. They contend that defendants' reliance on the "content analysis" in reassigning Johnson amounted to an attempt to exercise control over the Collegian's content. Citing the national awards won by the Collegian, they also dispute conclusions reached by the analysis. With respect to their state law claims, plaintiffs seek a declaratory judgment that SPI has the right and power under state law to retain officers of its choosing, even if such action is contrary to the wishes of KSU faculty and administrators.

Defendants filed a motion to dismiss under Rule 12(b)(6), which the district court granted after reviewing the complaint and the documents attached thereto, including Simon's content analysis. The court held that Johnson lacked standing and failed to allege a violation of a federal right, reasoning that Johnson's right to freedom of the press was not affected by his removal because he exercised no

control over the content of the Collegian. It also determined that, although Lane and Rice had standing to file suit, their constitutional claims failed because defendants based their decision on the quality of the Collegian rather than its content. The court further held that the Eleventh Amendment protected defendants from suit. Declining to exercise supplemental jurisdiction over the remaining state law claims, the court dismissed the action in its entirety.

Lane and Rice appeal the dismissal of their claims. Johnson did not file a notice of appeal and is not a party to the action before this court. Both Lane and Rice have since graduated from KSU and no longer serve on the Collegian.

**II**

We review the district court's grant of a Rule 12(b)(6) motion de novo, accepting all well-pleaded allegations as true and viewing them in the light most favorable to the plaintiff. Johnson v. Johnson, 466 F.3d 1213, 1214 (10th Cir. 2006). "[W]e must determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." Forest Guardians v. Forsgren, 478 F.3d 1149, 1160 (10th Cir. 2007). Although the plaintiff must provide "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action," Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007) (citation omitted), "[s]pecific facts are not necessary; the statement need only give the defendant fair

notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Padrus, 127 S. Ct. 2197, 2200 (quotations and citations omitted) (omission in original).

Before reaching the merits of this case, however, we must address our jurisdiction over plaintiffs' claims. In particular, we must determine whether Lane and Rice's respective graduations from KSU have rendered their claims moot. "Mootness is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction." McClendon v. City of Albuquerque, 100 F.3d 863, 867 (10th Cir. 1996) (citation omitted); see U.S. Const. art. III, § 2, cl. 1. Because "[a] federal court has no power to give opinions upon moot questions or declare principles of law which cannot affect the matter in issue in the case before it," a controversy must exist during all stages of appellate review. S. Utah Wilderness Alliance v. Smith, 110 F.3d 724, 727 (10th Cir. 1997) (citation omitted). "Once such controversy ceases to exist, the action is moot and this court lacks jurisdiction to adjudicate the matter." United States v. Seminole Nation of Okla., 321 F.3d 939, 943 (10th Cir. 2002) (citation omitted).

We have previously held that "when an individual graduates from school there no longer exists a live controversy necessary to support an action to participate in interscholastic activity." Bauchman ex rel. Bauchman v. West High Sch., 132 F.3d 542, 548 (10th Cir. 1997). In Bauchman, a student challenged her

-8-

choir instructor's alleged advocacy of Mormonism during classes and choir performances. While the case was pending upon appeal, Bauchman graduated from high school. Id. at 546. After determining that the defendant school officials "no longer ha[d] the power or opportunity to adversely affect Ms. Bauchman's constitutional rights," we dismissed her declaratory and injunctive claims as moot. Id. at 548; see also Fischbach v. N.M. Activities Ass'n, 38 F.3d 1159, 1160 (10th Cir. 1994) (holding that due to student plaintiff's graduation, "the power of the [defendant state activities association] to adversely affect his rights ha[d] ended" and the case was moot).

Here, too, Lane and Rice have graduated, and no longer serve on the board of the Collegian. Because defendants can no longer impinge upon plaintiffs' exercise of freedom of the press, plaintiffs' claims for declaratory and injunctive relief are moot.

An exception to the mootness doctrine exists for cases that are "capable of repetition, yet evading review." Murphy v. Hunt, 455 U.S. 478, 482 (1982) (quotations omitted). But this exception applies only when: "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [i]s a reasonable expectation that the same complaining party w[ill] be subjected to the same action again." Id. (quoting Weinstein v. Bradford, 423 U.S. 147, 149 (1975) (per curiam)); see also Seminole Nation, 321 F.3d at 943. Although Lane and Rice's claims as student editors arguably meet

the first prong of this test, they fail to satisfy the second prong. Because only KSU students serve as editors of the Collegian, there is no reasonable expectation that Lane and Rice will be subjected, post-graduation, to censorship by defendants in connection with that newspaper. See id. Thus, we can carve out no exception to the mootness doctrine for their claims.

Plaintiffs have not formally sued in a representative capacity, and there has been no effort on anyone's part to substitute current editors as parties. Student Publications, Inc., the non-profit corporate publisher, was neither named initially as a party nor has it sought to join this litigation. Amici urge us to confer third-party standing to plaintiffs on behalf of current and future Collegian editors. Given that Johnson did not appeal, and neither the publisher nor the present editors have joined this litigation, we cannot countenance this type of end-run around the general requirement that parties raise their own claims. "Third-party standing requires not only an injury in fact and a close relation to the third party, but also a hindrance or inability of the third party to pursue his or her own claims." Terrell v. INS, 157 F.3d 806, 809 (10th Cir. 1998) (citing Miller v. Albright, 523 U.S. 420, 447 (1998) (O'Connor, J., concurring)). Nothing in the pleadings permits us to conclude that the publisher and current editors are hindered from bringing suit to vindicate their own First Amendment rights.

**III**

When a civil case becomes moot pending appellate adjudication, "[t]he

-10-

established practice . . . is to reverse or vacate the judgment below and remand with a direction to dismiss." United States v. Munsingwear, Inc., 340 U.S. 36, 39, (1950). "Vacatur is in order when mootness occurs through . . . circumstances not attributable to the parties." Arizonans for Official English v. Arizona, 520 U.S. 43, 71 (1997) (citation omitted). Accordingly, we **VACATE** the decision of the district court and **REMAND** with instructions to **DISMISS**.