**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 28, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**
_____

CHIHUAHUAN GRASSLANDS
ALLIANCE,

     Plaintiff,

and

NEW MEXICO WILDERNESS
ALLIANCE; SKY ISLAND ALLIANCE,

     Plaintiffs-Appellants,

v.

DIRK KEMPTHORNE, in his official
capacity as the United States Secretary of
Interior; LINDA S.C. RUNDELL, in her
official capacity as the New Mexico
Director of the Bureau of Land
Management; BUREAU OF LAND
MANAGEMENT, a bureau within the
Department of the Interior,

     Defendants-Appellees.

No. 07-2183
(D.Ct. No. CIV-03-1423-WJ/RHS)
(D. New Mexico)

_____

**ORDER**

Before **MURPHY**, **BRORBY**, and **HARTZ,** Circuit Judges.

On October 7, 2008, this Court issued an Order and Judgment disposing of

the above-captioned appeal. After further consideration, the panel, on its own

motion, has determined the Order and Judgment should be published.  The Clerk

is hereby directed to docket the decision as a published opinion nunc pro tunc to

October 7, 2008.


                              **Entered by the Court:**

                              **WADE BRORBY**
                              United States Circuit Judge

FILED
United States Court of Appeals
Tenth Circuit

October 7, 2008

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

CHIHUAHUAN GRASSLANDS ALLIANCE,

      Plaintiff,

and

NEW MEXICO WILDERNESS ALLIANCE; SKY
ISLAND ALLIANCE,

      Plaintiffs-Appellants,

v.

DIRK KEMPTHORNE, in his official capacity as
the United States Secretary of Interior; LINDA
S.C. RUNDELL, in her official capacity as the
New Mexico Director of the Bureau of Land
Management; BUREAU OF LAND
MANAGEMENT, a bureau within the Department
of the Interior,

      Defendants-Appellees.

No. 07-2183

---

**Appeal from the United States District Court
for the District of New Mexico
(D.C. No. CIV-03-1423-WJ/RHS)**

---

Erik Schlenker-Goodrich of Western Environmental Law Center, Taos, New
Mexico, for Plaintiffs-Appellants.

Aaron Avila, Attorney, Environment and Natural Resources Division, Department
of Justice, Washington, D.C. (Ronald J. Tenpas, Assistant Attorney General, John
S. Most and John A. Bryson, Attorneys, Environment and Natural Resources

Division, Department of Justice, Washington, D.C.; Arthur Arguedas, Office of the Solicitor, Department of the Interior, Santa Fe, New Mexico, with him on the brief), for Defendants-Appellees.

---

Before **MURPHY, BRORBY and HARTZ**, Circuit Judges.

---

**BRORBY**, Circuit Judge.

---

This appeal involves the United States Bureau of Land Management's (BLM's) sale of oil and gas mineral leases on public lands in a grasslands area, commonly known as the Nutt Grasslands, located in south-central New Mexico. Appellants New Mexico Wilderness Alliance and Sky Island Alliance (Appellants)[1] brought a civil suit against various federal agencies, including the BLM, and officials representing those agencies (collectively referred to as Appellees), seeking declaratory and injunctive relief pursuant to the Administrative Procedure Act (APA), 5 U.S.C. §§ 551 et seq., for alleged violations of the National Environmental Policy Act of 1969 (NEPA), 42 U.S.C. §§ 4321 et seq., and the Federal Land Policy and Management Act of 1976 (FLPMA), 43 U.S.C. §§ 1701 et seq., in conjunction with the sale of those leases. The district court issued a decision denying Appellants' request for declaratory and injunctive relief, which they now appeal and Appellees oppose. Prior to oral

---

[1] Chihuahuan Grasslands Alliance was a named Plaintiff during the proceeding before the district court, but is not an Appellant in this appeal.

argument, Appellees filed a motion to dismiss the appeal as moot on grounds the

BLM terminated for nonpayment the two leases at issue on appeal, leaving no

case or controversy at issue and no meaningful grounds for relief.  For the

following reasons, we grant Appellees' motion to dismiss the appeal as moot,

dismiss the appeal for lack of jurisdiction, vacate the district court's decision

issued June 18, 2007, and remand with instructions to dismiss.[2]


## I.  Background

The parties have submitted briefs delineating in detail the facts and

arguments supporting their positions on the grasslands ecosystem involved in

their litigation, including the perceived environmental consequences of fluid

mineral leases on the public lands at issue.  Nevertheless, following briefing and

oral argument on appeal, we have determined only the following undisputed facts

are relevant to the disposition of this appeal on the issue of mootness.


On November 25, 2002, the BLM issued a Notice of Competitive Lease

Sale (Lease Sale) covering multiple federal oil and gas leases for a primary term

---

[2] *See Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 482 (1990) (holding the "ordinary practice in disposing of a case that has become moot on appeal is to vacate the judgment with directions to dismiss"); *Lane v. Simon*, 495 F.3d 1182, 1187 (10th Cir. 2007) (concluding that "[w]hen a civil case becomes moot pending appellate adjudication, the established practice is to reverse or vacate the judgment below and remand with a direction to dismiss" (quotation marks and citation omitted)).

of ten years, including the two leases at issue in this appeal – 200301052 and 200301055 (referenced as Lease 52 and Lease 55). Together, Leases 52 and 55 encompass 3,182.73 acres of federal public lands in the part of the Nutt Grasslands located in Luna County, New Mexico. The Nutt Grasslands are managed by the BLM through the 1993 Mimbres Resource Management Plan, which covers approximately three million surface acres of public land and 4.1 million subsurface acres in the Mimbres Resource Area. The Mimbres Resource Management Plan is based on an Environmental Impact Statement (EIS) prepared by the BLM in October 1992. In November 2002, prior to issuance of its Lease Sale notice, the BLM prepared a Documentation of Plan Conformance and NEPA Adequacy (DNA) in order to determine whether NEPA required a supplemental EIS based on any changed circumstances or new information. The DNA concluded the Lease Sale was in conformance with the 1993 Mimbres Resource Management Plan and that the 1992 Mimbres EIS satisfied the BLM's pre-lease NEPA duties.

On January 13, 2003, Appellant New Mexico Wilderness Alliance filed an administrative protest against the proposed Lease Sale, principally on grounds the BLM had violated NEPA by failing to conduct the appropriate NEPA analysis or otherwise consider a multiple use concept as part of the 'hard look" it was required to take of the agency's action. As a result, it contended the Lease Sale

-4-

posed negative environmental implications to the Nutt Grasslands, including its wilderness values, and, in support, submitted documentation concerning the wilderness values of the Nutt Grasslands Wilderness Complex and the Robledo Mountains-Sierra de las Uvas Wilderness Complex. It further requested the affected lease parcels be withdrawn from the proposed Lease Sale.[3] On January 22, 2003, the BLM sold the leases at issue in this appeal to Imperial Oil Properties (Imperial) of Wichita, Kansas, but did not formally issue the leases at that time. In a letter dated February 20, 2003, the BLM notified Appellant New Mexico Wilderness Alliance of receipt of its protest and stated its intent to suspend lease issuance until resolution of the protest.

Thereafter, on April 9, 2003, the BLM rejected Appellant New Mexico Wilderness Alliance's protest on grounds the 1992 EIS prepared for the 1993 Mimbres Resource Management Plan satisfied its NEPA requirements, but that it would "continue to withhold the protested parcels from lease issuance until an evaluation of the [New Mexico Wilderness Alliance's] wilderness proposals [had] been completed for those ... proposed wilderness areas in which the protested parcels lie." R., Doc. 26 at 427. On April 18, 2003, New Mexico Wilderness

---

[3] On February 27, 2003, Appellant Sky Island Alliance filed its protest of the sale of the leases based on the lack of site-specific NEPA analysis. However, the BLM rejected its protest due to the fact its submission occurred after the leases were sold.

Alliance provided the BLM with additional documentation for the Nutt Grasslands.

On July 7, 2003, the BLM notified New Mexico Wilderness Alliance of its completed review of its proposal on the Robledo Mountains-Sierra de las Uvas Wilderness Complex and the BLM's conclusion the proposal did not provide any significant new information regarding the wilderness characteristics of the area protested.[4]  On July 11, 2003, the BLM formally issued the contested leases to Imperial.

Thereafter, on October 1, 2004, Appellants filed their Complaint seeking declaratory and injunctive relief, commencing the instant litigation.  In Count 1 of the Complaint they alleged the BLM violated NEPA by proceeding with the Lease Sale without completing an Environmental Assessment (EA) or EIS.  In the remaining three counts, they alleged the BLM failed to assess the direct, indirect, and cumulative environmental consequences of the Lease Sale (Count 2); the BLM failed to consider a reasonable range of alternatives for oil and gas leasing

---

[4]  As part of their appeal, Appellants point out the BLM stated it had reviewed the proposal for the Robledo Mountains-Sierra de las Uvas Wilderness Complex, rather than also acknowledging any review of the proposal for the Nutt Grasslands Wilderness Complex.  While Appellants acknowledge the Robledo Complex is ecologically linked to the Nutt Grasslands, they claim it is significantly distinct from the Nutt Grasslands.  We need not address this or the other issues raised in the appeal, given our determination the appeal is moot.

and development in the Nutt Grasslands in conjunction with the Lease Sale (Count 3); and Appellees failed to involve the public in the Lease Sale (Count 4), all of which they claim was arbitrary, capricious, an abuse of discretion, and not in accordance with the law or procedures required by law. As a remedy, they requested declaratory and injunctive relief predicated on the Lease Sale, and asked the district court to void and enjoin the Lease Sale and the leases issued in conjunction with it.

Over the course of the resulting litigation, a number of parcels for lease were either never acquired or terminated for non-payment of rent, resulting in the parties stipulating that only four parcels of land were at issue at the time the district court issued its decision. On June 18, 2007, following the filing of multiple pleadings by the parties and oral argument, the district court issued a decision on the merits, holding in favor of the BLM and the other Appellees and denying Appellants' request for declaratory and injunctive relief. *Chihuahuan Grasslands Alliance v. Norton*, 507 F. Supp. 2d 1216 (D. N.M. 2007).[5] On appeal, Appellants acknowledge that only Lease 52 and Lease 55 are now in contention. They frame the issues presented on appeal as follows:

Whether BLM's *sale and issuance of federal mineral leases violated*

_____

[5] The caption on appeal now reflects the substitution of Secretary Dirk Kempthorne of the United States Department of Interior for former Secretary Gale Norton.

... *NEPA* where:

      1. The leases surrendered surface use rights;

      2. BLM did not prepare a lease-stage NEPA analysis addressing site specific environmental concerns or reasonably foreseeable impacts;

      3. BLM instead relied upon a programmatic NEPA analysis prepared for a Resource Management Plan;

      4. BLM did not consider lease-stage alternatives, in particular a no leasing alternative;

      5. BLM conceded the need for site-specific NEPA analysis but asserts that such analysis can be prepared at the drilling stage; and

      6. BLM rejected [Appellants'] information and proposal concerning the wilderness values of the lands in contention by looking at the wrong information and the wrong proposal.

Apt. Br. at 2 (italics added). In response, Appellees set forth their arguments in support of the district court's decision and in opposition to Appellants' appeal.


## II.  Motion to Dismiss

Appellees have now filed a motion to dismiss the appeal as moot because the leases in dispute, Lease 52 and Lease 55, have been terminated for nonpayment. In support, Appellees submit the Declaration of Lourdes Ortiz – a BLM land law examiner and member of the Lease Adjudication Team in New Mexico.[6] According to Ms. Ortiz's declaration, on September 25, 2007, Minerals Management Service (MMS) electronically sent her office a spreadsheet as

---

[6] In support of her affidavit, Ms. Ortiz attached the MMS spreadsheet, letters of notice of oil and gas lease termination, proof of return of the certified letters and notation the letters were re-sent by regular mail, and a BLM case recordation/serial register page showing closure of the two lease cases at issue in this appeal.

notification of the federal oil and gas leases it believed were terminated due to non-payment or for other reasons, which included Leases 52 and 55, referred to as NMNM 109730 and NMNM 109733. The spreadsheet showed these leases, which were issued in July 2003, were deemed terminated on August 1, 2007, for nonpayment, which Ms. Ortiz explains relates back to the anniversary of the date of the lease. Ms. Ortiz represents her office sent certified letters to the lessee, Imperial, on November 19, 2007, notifying it rent was due and giving it sixty days from receipt of the letters, as required by statute and regulation, to petition for reinstatement of the leases. She also represents the United States Postal Service returned the certified letters, and her office, as standard practice, then re-sent the letters to the lessee via regular mail on January 10, 2008, giving the lessee sixty days from receipt of those letters before finalizing termination of the leases. She states that on March 13, 2008, after receiving no response to either the November 19, 2007 certified letters or January 10, 2008 regular mail letters, her office closed the two lease cases at issue.[7] Based on termination of the instant

_____

[7] Ms. Ortiz's Declaration addresses Appellants' query regarding the timing of the BLM's motion to dismiss, in which Appellants question why the leases were terminated on August 1, 2007 – only one day after they filed their Notice of Appeal – and why they were not notified of this fact until September 3, 2008. Based on the information provided, we agree with Appellees' contention that the relevant date on which the appeal became moot is March 13, 2008, because the leases were potentially subject to reinstatement prior to that date. While we do not condone Appellees' failure to timely inform Appellants and this court of the termination of the leases after March 13, 2008, Appellants have not presented argument on how this delay prejudiced them; neither are we aware of any such

(continued...)

leases, Appellees argue no case or controversy or meaningful remedy now exists and this appeal should be dismissed as moot because Appellants' underlying claims and appeal are premised on the Lease Sale and the BLM's failure to comply with NEPA in conjunction with the contested Lease Sale, under which no leases now exist.

In response, Appellants contend their claims are not moot. Despite the fact the BLM terminated these last two leases, they suggest a controversy still exists because: (1) nothing has mooted their claims the BLM failed to comply with NEPA and consider their wilderness values information; and (2) the BLM has not terminated or withdrawn: (a) the November 2002 DNA concerning the proposed Lease Sale; (b) its wilderness evaluation contained in its April 14, 2003 letter in response to their protest; or (c) its decision rejecting their wilderness proposal contained in its July 7, 2003 letter. They now suggest these are the "final agency actions" they contested, rather than the proposed Lease Sale and subsequent leases issued, and claim these "final agency actions" solidify and finalize the BLM's efforts to comply with NEPA and should be declared "unlawful" and "set aside."

---

[7](...continued)
prejudice, given Appellants had already filed their appeal and reply briefs prior to that date.

In arguing against mootness, they contend nothing establishes the BLM's NEPA violations will not "recur," so that the BLM should be enjoined from relying on these flawed final agency actions or the same flawed process in the future should it "re-sell" leases for oil and gas development in the same area. In essence, they are invoking an exception to mootness when a case is capable of repetition, yet evading review. Appellants also suggest Appellees' "voluntary cessation of a challenged action will ... not moot" this case unless it is absolutely clear that the allegedly wrongful behavior cannot reasonably be expected to recur and claim the BLM has failed to carry its burden of demonstrating that lease sales will not continue. Thus, they appear to be invoking another exception to mootness based on voluntary cessation of illegal conduct to avoid review. Alternatively, in the event their appeal is deemed moot, they request vacatur of the district court's June 18, 2007 decision to prevent preclusion from re-litigating any underlying NEPA and FLPMA claims.

In response, Appellees argue the 2002 DNA and the BLM's review and rejection of Appellants' wilderness information was done in the context of the Lease Sale and issuance of the leases, which Appellants challenged in the district court. Because the BLM has terminated the last two leases, Appellees contend nothing is left of the Lease Sale so that a remand to comply with NEPA would be a futile exercise. Should the BLM rely on the 2002 DNA or its evaluation and

rejection of Appellants' wilderness information in the context of any future final agency action, Appellees suggest that final agency action may be the subject of a lawsuit alleging the agency failed to comply with NEPA. Finally, Appellees do not object to Appellants' alternative request for this court to vacate the district court's decision.

### III. Discussion

Article III limits a federal court's jurisdiction to "cases and controversies." *See* U.S. Const. art III, § 2, cl. 1. "Mootness is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction." *See Disability Law Ctr. v. Millcreek Health Ctr.*, 428 F.3d 992, 996 (10th Cir. 2005) (quotation marks and citations omitted). As a result, "[f]ederal courts may adjudicate only actual controversies." *Id.* (relying on *Lewis*, 494 U.S. at 477-78). "Because a federal court has no power to give opinions upon moot questions or declare principles of law which cannot affect the matter in issue in the case before it, a controversy must exist during all stages of appellate review." *Lane*, 495 F.3d at 1186 (quotation marks and citation omitted).

"If a party to an appeal suggests that the controversy has, since the rendering of judgment below, become moot, that party bears the burden of coming forward with the subsequent events that have produced that alleged result."

-12-

*Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 98 (1993). "Vacatur is in order when mootness occurs through happenstance-circumstances not attributable to the parties – or ... the unilateral action of the party who prevailed in the lower court." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 71-72 (1997) (quotation marks and citation omitted). *See also Rio Grande Silvery Minnow v. Keys,* 355 F.3d 1215, 1221 (10th Cir. 2004) (holding "vacatur ... is the equitable principle a party should not have to bear the consequences of an adverse ruling when frustrated by the vagaries of the circumstances"). We review mootness issues de novo. *See Disability Law Ctr.*, 428 F.3d at 996. "Once [a] ... controversy ceases to exist, the action is moot and this court lacks jurisdiction to adjudicate the matter." *Id.* (quotation marks and citation omitted).

We have held a case or controversy no longer exists when it is impossible to grant any effectual relief. *See Colo. Off-Highway Vehicle Coal. v. U.S. Forest Serv.*, 357 F.3d 1130, 1133 (10th Cir. 2004) (relying on *Church of Scientology v. United States,* 506 U.S. 9, 12 (1992)). With respect to injunctive relief and the question of mootness, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects." *Beattie v. United States*, 949 F.2d 1092, 1094 (10th Cir. 1991) (quotation marks and citation omitted). The party requesting relief must "demonstrate a good chance of being likewise injured in

the future." *Id.* at 1093. "Likewise, with respect to declaratory relief, we look beyond the initial controversy which may have existed at one time and decide whether the facts alleged show that there is a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* at 1094 (quotation marks, alterations, and citations omitted). "If an event occurs while a case is pending that heals the injury and only prospective relief has been sought, the case must be dismissed." *S. Utah Wilderness Alliance v. Smith*, 110 F.3d 724, 727 (10th Cir. 1997).

One exception to a claim of mootness is a defendant's voluntary cessation of an alleged illegal practice which the defendant is free to resume at any time. *See Riley v. INS*, 310 F.3d 1253, 1256-57 (10th Cir. 2002). This exception is based on "the principle that a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior." *See City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 284 n.1 (2001). In other words, this exception exists to counteract the possibility of a defendant ceasing illegal action long enough to render a lawsuit moot and then resuming the illegal conduct. Another "exception to the mootness doctrine exists when cases are 'capable of repetition, yet evading review.'" *See Disability Law Ctr.*, 428 F.3d at 996 (quoting *Murphy v. Hunt*, 455 U.S. 478, 482 (1982)). This exception "is only to be used in exceptional situations," *White v. Colorado*, 82 F.3d 364, 366 (10th

-14-

Cir. 1996), and "arises 'when: (1) the duration of the challenged action is too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party ... [will] be subjected to the same action again.'" *Disability Law Ctr.*, 428 F.3d at 996 (quoting *United States v. Seminole Nation of Okla.*, 321 F.3d 939, 943 (10th Cir. 2002)).

In applying these principles to this appeal, it is clear Appellants framed the issues in their Complaint and appeal briefs squarely on the Lease Sale and leases issued in conjunction with it. For example, in the Complaint, they alleged the BLM violated NEPA by proceeding with the Lease Sale without completing an EA or EIS, failed to assess the environmental consequences of the Lease Sale, failed to consider a reasonable range of alternatives in proposing the Lease Sale, and failed, along with the other Appellees, to involve the public in the Lease Sale. Under these circumstances, it is not difficult to determine their claims rest directly with the Lease Sale and its issued leases.

Correspondingly, in their appeal, Appellants prefaced all of the issues presented on whether the "BLM's *sale and issuance of federal mineral leases* violated ... NEPA." While they mention the BLM's underlying actions regarding the Lease Sale and leases issued thereunder, it is apparent the crux of their prior litigation and this appeal has centered on the Lease Sale and subsequently-issued

leases. This point is further illustrated by the fact that during litigation, when multiple leases ceased to exist, Appellants no longer raised a dispute with regard to those leases, and, instead, made their claims contingent solely on the remaining leases. Now that those leases have terminated and nothing remains to contest in conjunction with the Lease Sale, they raise for the first time an argument that it is the BLM's actions underlying the Lease Sale which constitute the "final agency actions" they are contesting, and not the Lease Sale and leases issued thereunder. This is a different claim or legal theory from that originally brought in their Complaint, which centered on the Lease Sale and subsequently-issued leases. Similarly, Appellants previously predicated their request for declaratory and injunctive relief on the Lease Sale and leases and in asking the leases be determined void and set aside, but now, on appeal, alter their request and instead ask only that the final agency actions underlying the Lease Sale be declared in violation of NEPA and set aside. This, too, varies from the primary focus of the relief originally sought.

For the purpose of determining the issue of mootness, we will rely on the claims and requests for relief presented in the Complaint which center primarily on the Lease Sale and issued leases.[8] Given no leases under the proposed Lease

---

[8] Ordinarily, we will not consider a new theory on appeal, even if it falls under the same general category as an argument raised at trial. *See Bancamerica*

(continued...)

-16-

Sale now exist, we conclude there is no continuing, present, adverse effect for the purpose of granting injunctive relief and no substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. *See Beattie*, 949 F.2d at 1094. For these reasons, we determine no case or controversy exists and it is impossible for us to grant any effectual relief, making the appeal before us moot. As previously stated, once an action is moot, we lack jurisdiction to adjudicate the matter.

In making our mootness determination, we reject Appellants' suggestion this case meets the mootness exception of "voluntary cessation." Nothing in the record presented to us indicates the BLM's termination of the leases at issue constitutes a "voluntary cessation" of illegal conduct made in an effort to evade judicial review or avoid judgment by temporarily altering questionable behavior. Instead, the terminations for nonpayment resulted from the actions of a third party, implicating the principle that vacatur is in order when mootness occurs through happenstance circumstances not attributable to the parties. *See Arizonans for Official English*, 520 U.S. at 71.

---

[8](...continued)
*Commercial Corp. v. Mosher Steel of Kan., Inc.*, 100 F.3d 792, 798-99 (10th Cir.), *amended on other grounds*, 103 F.3d 80 (1996). The decision to take up a question for the first time on appeal is left primarily to our discretion, based on the facts of the individual case before us. *See Singleton v. Wulff*, 428 U.S. 106, 121 (1976).

We also reject Appellants' contention a controversy still exists because nothing establishes the BLM's NEPA violations will not recur and that it will not rely on the same flawed "final agency actions" or process in the future should it "re-sell" leases for oil and gas development in the same area. In making this argument, it appears Appellants are claiming another exception to mootness determinations, contending their case is "capable of repetition, yet evading review." *See Disability Law Ctr.*, 428 F.3d at 996. As we pointed out earlier, this exception only applies in exceptional situations, *see White*, 82 F.3d at 366, and "arises 'when: (1) the duration of the challenged action is too short to be fully litigated prior to its cessation or expiration, *and* (2) there is a reasonable expectation that the same complaining party ... [will] be subjected to the same action again.'" *Disability Law Ctr.*, 428 F.3d at 996 (emphasis added and citation omitted). Even though these two elements are conjunctive, Appellants fail to present an argument on the first element of the exception; i.e., that the duration of the challenged action was too short to be fully litigated prior to its cessation or expiration, thereby evading review.[9] Even assuming the first element is met, and we turn to the second element on which Appellants rely in claiming they may be subjected to the same action again, it is clear the BLM has sufficiently

---

[9] We have said temporary closure orders are examples of a challenged action with a short duration because they expire or are replaced by permanent orders before the challenges to them can be fully litigated. *See Disability Law Ctr.*, 428 F.3d at 997. However, nothing in the case before us suggests the ten-year-term leases issued were intended to be of short duration.

-18-

demonstrated no leases now exist in conjunction with the prior proposed Lease Sale so that the very controversy Appellants sought to adjudicate has been eliminated.

Under the circumstances presented, it is clear the controversy initially raised concerning the proposed Lease Sale and subsequently-issued oil and gas leases has now ceased to exist and the requested injunctive and declaratory relief to set aside the Lease Sale and leases issued in conjunction with it can no longer be given. Therefore, the action is moot and leaves us with no jurisdiction to adjudicate the matter on appeal. The "ordinary practice in disposing of a case that has become moot on appeal is to vacate the judgment with directions to dismiss." *Lewis*, 494 U.S. at 482; *see also Lane*, 495 F.3d at 1187. This conforms with Appellants' alternative request for vacatur of the district court's decision to prevent preclusion from re-litigating their underlying NEPA and FLPMA claims.[10]

## IV. Conclusion

Accordingly, we **GRANT** Appellees' motion to dismiss the appeal as moot, **DISMISS** the appeal for lack of jurisdiction, **VACATE** the district court's

---

[10] Not only do we lack jurisdiction in the matter before us, but we further decline at this juncture to address the merit of any future claims Appellants may seek.

-19-

decision issued June 18, 2007, and **REMAND** with instructions to dismiss.