**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

EAGLE AIR MED CORPORATION;
SCENIC AVIATION, INC.,

      Plaintiffs–Appellants,

v.

JAMES B. MARTIN, Executive Director
of Colorado Department of Public Health
and Environment, in his official capacity;
D. RANDAL KUYKENDALL, Chief of
Emergency Medical and Trauma Services
Section, Colorado Department of Health
and Environment, in his official capacity,

      Defendants–Appellees.

No. 09-1125
(D.C. No. 1:08-CV-00532-LTB)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **HOLLOWAY**, and **HOLMES**, Circuit Judges.

Eagle Air Med Corporation ("Eagle") and Scenic Aviation, Inc. appeal a district

court order dismissing their case as moot. Eagle initiated this action after the Colorado

---

    * This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. This court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 32.1.

Department of Public Health and Environment ("CDPHE" or the "Department") began an investigation jeopardizing Eagle's air ambulance license. The Department dropped that investigation when a non-party, the Commission on Accreditation of Medical Transport Systems ("CAMTS"), agreed to continue its accreditation of Eagle. Because we agree with the district court that the voluntary cessation doctrine does not apply, we affirm.

# I

Eagle operates an air ambulance service in Colorado under a license issued by the CDPHE.[1] Under the Colorado Emergency Medical and Trauma Services Act and its implementing regulations, air ambulance licensees must be accredited by CAMTS, a non-governmental organization that is not a party to this suit. Colo. Rev. Stat. §§ 25-3.5-101, 25-3.5-307(1)(a); 6 Colo. Code Regs. §§ 1015-3-13.2(5), -13.5. Eagle first obtained full CAMTS accreditation in 2001.

On November 30, 2007, CAMTS sent a letter withdrawing Eagle's accreditation effective thirty days from receipt. Eagle initiated CAMTS' appeal process and notified CDPHE of the pending withdrawal. The Department responded by letter, acknowledging CAMTS' "intention to withdraw accreditation from" Eagle and stating that its "office has initiated an investigation of this matter." CDPHE regulations permit it to revoke or

---

[1] Scenic Aviation, Inc., provides aviation services to enable Eagle to operate, and is a plaintiff-appellant in this suit. We use "Eagle" to refer generally to both plaintiff-appellants.

suspend an air ambulance license if a licensee fails to maintain CAMTS accreditation. 6 Colo. Code Regs. § 1015-3-13.13(1), (3)(F).

CAMTS agreed to defer its withdrawal of Eagle's accreditation and to conduct a hearing on the matter. Before any hearing occurred, however, Eagle filed suit against CDPHE officials James Martin and D. Randal Kuykendall in their official capacities, claiming that Colorado's air ambulance licensing requirements are preempted by the Airline Deregulation Act of 1978, the Federal Aviation Act, and related federal regulations. On defendants' motion, the district court stayed the case pursuant to Younger v. Harris, 401 U.S. 37 (1971), pending the Department's investigation.

On July 16, 2008, Eagle and CAMTS entered into a consent agreement under which CAMTS extended Eagle's accreditation to July 14, 2009. When the Department learned of the consent agreement, it notified Eagle Air that "the investigation initiated by [the] agency [had] concluded and no administrative action [would] be taken at this time." Eagle requested the district court lift the previously imposed stay.

Once the stay was lifted, defendants moved to dismiss the case as moot. Eagle argued that the voluntary cessation exception to mootness applied because CDPHE terminated the investigation of its own accord. It further claimed that defendants failed to show that the challenged conduct could not reasonably be expected to recur.

The district court rejected Eagle's position. It concluded that Eagle's air ambulance license was no longer subject to an imminent threat of revocation and that the voluntary cessation doctrine did not apply because CAMTS' actions—not CDPHE's—

mooted the case. Accordingly, the court granted defendants' motion to dismiss. Eagle timely appealed.

## II

### A

Mootness is a jurisdictional issue: "Without a live, concrete controversy, we lack jurisdiction to consider claims no matter how meritorious." Mink v. Suthers, 482 F.3d 1244, 1253 (10th Cir. 2007); see also Arizonans for Official English v. Arizona, 520 U.S. 43, 67 (1997) ("[A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." (quotation omitted)). "The core question in [a] mootness inquiry is whether granting a present determination of the issues offered will have some effect in the real world." Kennecott Utah Copper Corp. v. Becker, 186 F.3d 1261, 1266 (10th Cir. 1999) (quotation and alteration omitted). We review a district court's mootness determination de novo. See Chihuahuan Grasslands Alliance v. Kempthorne, 545 F.3d 884, 891 (10th Cir. 2008).

The district court held that Eagle did "not argue that the general principles of the doctrine of mootness are not present in this case . . . . Rather, [Eagle] argue[d] that the 'voluntary cessation' exception to this doctrine is applicable." Eagle challenges this conclusion on appeal, citing to several portions of its response to defendants' motion to dismiss. In particular, Eagle contends that it preserved the general mootness issue when it argued:

> The defendants still enforce Colorado's air ambulance licensing

requirements, including the CAMTS accreditation requirement, thus jeopardizing [Eagle's] rights to carry out air transport in Colorado to the full scope of [its] federal authorization. The [p]laintiffs in the current case have not changed their behavior; Eagle is still being "reviewed" by CAMTS and faces a CAMTS reaccreditation requirement also in July, 2009.

Although this snippet of text appears somewhat related to general mootness principles, it is squarely aimed at addressing exceptions to mootness when read in context. The above-quoted passage immediately follows Eagle's attempt to distinguish two cases cited by defendants, <u>Disability Law Center v. Millcreek Health Center</u>, 428 F.3d 992 (10th Cir. 2005), and <u>Lane v. Simon</u>, 495 F.3d 1182 (10th Cir. 2007), as cases in which "the plaintiff withdrew its request for relief voluntarily—not where the defendant voluntarily ceased its allegedly wrongful behavior." Both cases concerned the "capable of repetition, yet evading review" exception to mootness. <u>See</u> <u>Lane</u>, 495 F.3d at 1187; <u>Disability Law Ctr.</u>, 428 F.3d at 996. Against this backdrop, Eagle's argument that "[p]laintiffs in the current case have not changed their behavior" is a clear reference to this exception.

Overall, Eagle's response focused primarily on its argument that defendants bore a "formidable burden" under the voluntary cessation doctrine to make "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur," quoting <u>Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.</u>, 528 U.S. 167, 190 (2000). Eagle argued repeatedly that defendants failed to satisfy this burden. Many of the statements cited by Eagle in support of its preservation argument refer directly to

Laidlaw's "reasonably be expected to recur" language.

Further, the passage upon which Eagle relies is sandwiched between discussions of the Laidlaw standard for voluntary cessation. Immediately before Eagle discusses Lane and Disability Law Center, it argues that defendants' statements fail to show that "the allegedly wrongful behavior cannot reasonably be expected to recur." Immediately after the quoted passage, it states, "The Tenth Circuit Court of Appeals has applied the principles set forth in Laidlaw, supra, cited above in numerous cases." Eagle then discusses several cases from this circuit applying the voluntary cessation doctrine.

Other statements cited by Eagle discuss the likelihood that the harm alleged will recur rather than the imminence of any present threat. For example, Eagle argued that defendants "have the power to reinstitute the jeopardization of Eagle's Colorado license." Likewise, Eagle concluded its mootness discussion by stating that when defendants' "wrongful actions recur, as they can reasonably be expected to do, [Eagle's] right to carry out their air transport business in Colorado will again be in serious jeopardy." Had Eagle been arguing general mootness instead of the voluntary cessation doctrine, one would expect Eagle to argue that its license was in imminent jeopardy, not that defendants could potentially place it in jeopardy. Similarly, Eagle's statements regarding defendants' continued enforcement of the challenged accreditation requirement are most naturally read as relevant to the likelihood that the allegedly wrongful behavior could recur—a voluntary cessation argument.

Eagle did not identify the standards for general mootness in its briefing before the

-6-

district court, nor did it discuss any cases concerning whether a non-immediate but potential governmental action is sufficient to avoid dismissal on mootness grounds.[2] Having reviewed Eagle's response to defendants' motion to dismiss, we agree with the district court: Eagle did not argue that its case remained live under general principles of mootness.

Because Eagle did not advance this argument below, we will not consider it on appeal. See Bancamerica Commercial Corp. v. Mosher Steel of Kan., Inc., 100 F.3d 792, 798-99 (10th Cir. 1996). Eagle's assertions regarding the voluntary cessation doctrine do not suffice to preserve an argument that its case is not moot as a general matter. An argument "that falls under the same general category as an argument presented at trial or presents a theory that was discussed in a vague and ambiguous way . . . will not be considered on appeal." Id. (quotations omitted).[3]

**B**

Eagle further contends that the district court erred in declining to apply the

_____

[2] Eagle did not argue below, and does not contend on appeal, that the costs of complying with Colorado's air ambulance licensing regime defeat defendants' mootness argument.

[3] Even on appeal, Eagle barely addresses general mootness principles. It devotes several pages of its opening brief to its argument that the general mootness point was preserved, but a mere two sentences, with a single citation to authority, to the proposition that its case is not moot as a general matter. See Wilburn v. Mid-South Health Dev., Inc., 343 F.3d 1274, 1281 (10th Cir. 2003) ("We . . . will not consider issues that are raised on appeal but not adequately addressed.").

voluntary cessation doctrine. "An exception to the mootness doctrine can occur when a defendant voluntarily ceases a challenged action. This exception traces to the principle that a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior." Greater Yellowstone Coal. v. Tidwell, 572 F.3d 1115, 1121 (10th Cir. 2009) (quotation and citations omitted). "[A] defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." Laidlaw, 528 U.S. at 190.

The district court concluded that CAMTS' decision to enter into a consent agreement with Eagle, rather than CDPHE's termination of its investigation, mooted this case. Because CDPHE's actions were compelled by the acts of a non-party, the court reasoned, there was no "voluntary" act on CDPHE's part. We agree.

In concluding that the voluntary cessation doctrine was inapplicable, the court relied heavily upon our decision in Chihuahuan Grasslands Alliance. We too find that case instructive. There, several environmental groups challenged the sale of oil and gas mineral leases granted by the Bureau of Land Management ("BLM"). 545 F.3d at 887-88. While the case was pending, the leases at issue were terminated for non-payment. Id. at 889. BLM moved to dismiss the case as moot, and the environmental groups argued that the voluntary cessation doctrine precluded dismissal. Id. at 889-90. We held that a non-party—the delinquent lessee—caused the case to become moot:

> [W]e reject Appellants' suggestion this case meets the mootness exception

-8-

of "voluntary cessation." Nothing in the record presented to us indicates the BLM's termination of the leases at issue constitutes a "voluntary cessation" of illegal conduct . . . . Instead, the terminations for nonpayment resulted from the actions of a third party, implicating the principle that vacatur is in order when mootness occurs through happenstance circumstances not attributable to the parties.

Id. at 893. Analogously, the termination of CDPHE's investigation "resulted from the actions of a third party"—CAMTS.

Eagle contends that this line of analysis is foreclosed by Adarand Constructors, Inc. v. Slater, 528 U.S. 216 (2000). In that case, plaintiff submitted the low bid for portion of a federal highway project. Id. at 219. The prime contractor awarded the subcontract to a different company, which had been certified by the Colorado Department of Transportation ("CDOT") as a disadvantaged business enterprise ("DBE"). Id. Under federal regulations, state highway agencies could certify a company as a DBE if the company demonstrated social disadvantage, but the agencies were required to presume social disadvantage if a company was owned and controlled by members of a racial minority. Id. at 218. Importantly, the federal Department of Transportation ("DOT") and third parties were empowered to challenge DBE designations made by state agencies. Id. On remand from the Supreme Court, the district court ruled that this scheme was unconstitutional. See Adarand Constructors, Inc. v. Pena, 965 F. Supp. 1556, 1584 (D. Colo. 1997). While an appeal of that decision was pending in this court, Colorado altered its DBE-certification procedure such that any company could obtain DBE status simply by stating that all owners suffered social disadvantage. See Adarand Constructors, Inc. v.

-9-

Slater, 169 F.3d 1292, 1296 (10th Cir. 1999).  Adarand Constructors promptly requested

and obtained DBE-certification from CDOT.  Id.  We dismissed the appeal as moot.  See

id. at 1296-97, 1299.

The Supreme Court reversed our dismissal.  It concluded that "[i]f th[e] case is

moot, it is because the Federal Government has accepted CDOT's certification of

petitioner as a disadvantaged business enterprise, and has thereby ceased its offending

conduct."  Adarand, 528 U.S. at 221-22.  Accordingly, the Court ruled that the voluntary

cessation doctrine should have applied.  Id. at 222.  In so holding, the Court remarked

that "DOT accepts only 'valid certifications' from state agencies" and that "DOT ha[d]

yet to approve—as it must—CDOT's procedure for certifying disadvantaged business

enterprises."  Id. at 222 (alteration omitted).  Noting "the material differences (not to say

incompatibility) between [CDOT's] procedure and the requirements of the DOT

regulations, it is not at all clear that CDOT's certification is a 'valid certification.'"  Id. at

223.

Based on this discussion, it is clear DOT possessed substantial discretion in

determining whether to accept CDOT's certification.  Because of this discretion, DOT's

acceptance or rejection of a certification would be truly voluntary.  In the case at bar,

however, CDPHE has no such discretion.[4]  Neither the statute nor the regulations at issue

_____

[4] The statute permits CDPHE to issue a conditional license to an air ambulance service that has not obtained CAMTS accreditation, but requires such a service to be

Continued . . .

allow CDPHE to reject a CAMTS' accreditation decision in a particular case.[5] See Colo. Rev. Stat. § 25-3.5-307(1)(a); 6 Colo. Code Regs. §§ 1015-3-13.2(5), -13.5, -13.13(1), -13.13(3)(F).

Because the Department's actions were compelled by the choices of a non-party, they were not truly voluntary. By the same token, we would not say that a court clerk voluntarily enters a judgment when so ordered by a court. When a party's actions are essentially ministerial and dictated by the actions of a non-party, the voluntary cessation doctrine does not apply. See Chihuahuan Grasslands Alliance, 545 F.3d at 893.

Nevertheless, Eagle argues that CDPHE acted voluntarily in ceasing its investigation because the Department possesses the authority to conduct broad investigations of licensees on matters other than CAMTS accreditation. CDPHE does in fact have the authority Eagle attributes to it. See Colo. Rev. Stat. § 25-3.5-308 (authorizing CDPHE to adopt rules for air ambulance licensees with respect to equipment, staffing, and medical oversight). However, the question we confront in this appeal is not whether CDPHE could have initiated a broad investigation of Eagle, but whether the actual investigation it undertook was limited to CAMTS accreditation. The record is clear that the Department's investigation of Eagle was so limited. While the

actively working towards accreditation and obtain accreditation within two years. Colo. Rev. Stat. § 25-3.5-307(1)(a). This provision is not at issue here.

[5] Although the statute is written in permissive rather than mandatory language, there is no indication in the record that CDPHE has discretion to reject a CAMTS accreditation, nor has Eagle argued that the Department possesses such discretion.

-11-

CAMTS appeal was pending, CDPHE informed the court that if Eagle's "accreditation is ultimately revoked by CAMTS, events will escalate quite rapidly; conversely, if the accreditation is not revoked, the investigation will be dropped." True to its representation, CDPHE ceased its investigation promptly after learning of the CAMTS-Eagle consent agreement. Eagle has provided no basis to conclude that CDPHE's investigation was directed at anything other than Eagle's accreditation status.

## III

The voluntary cessation doctrine does not apply when the decisions that moot a case are made by a non-party, even if those decisions compel ministerial actions by a party. **AFFIRMED**.

Entered for the Court

Carlos F. Lucero
Circuit Judge