David P. HAYES, Trustee for the Paul B Hayes Family Trust, Dated April 30, 2010, Plaintiff–Appellee,

v.

OSAGE MINERALS COUNCIL, Intervenor Defendant–Appellant,

and

Chaparral Energy, L.L.C., Defendant,

United States of America; Department of Interior; Bureau of Indian Affairs, Defendants–Appellees.

No. 16-5060

United States Court of Appeals, Tenth Circuit.

FILED June 30, 2017

Gentner F. Drummond, Wendy Drummond, Garry Michael Gaskins, II, Logan L. James, Donald A. Lepp, James R. Miller, Drummond Law, Tulsa, OK, for Plaintiff–Appellee.

Rachel Heron, Jody H. Schwarz, Stephen R. Terrell, United States Department of Justice, Environment & Natural Resources Division, Washington, DC, Cathryn Dawn McClanahan, Office of the United States Attorney, Northern District of Oklahoma, Tulsa, OK, for Defendants–Appellees United States of America, Department of Interior, Bureau of Indian Affairs.

Christopher Anthony Chrisman, Anthony Joseph Shaheen, Holland & Hart, Denver, CO, Nicholas Vernon Merkley, GableGotwals, Oklahoma City, OK, for Defendant Chaparral Energy, L.L.C.

David McCullough, Doerner, Saunders, Daniel & Anderson, Norman, OK, Jeffrey S. Rasmussen, Fredericks Peebles & Morgan, Louisville, CO, for Defendant Intervenor–Appellant Osage Minerals Council.

Before LUCERO, BACHARACH, and PHILLIPS, Circuit Judges.

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It

## ORDER AND JUDGMENT *

Carlos F. Lucero, Circuit Judge

This case arises from a dispute over whether the federal government violated the National Environmental Policy Act ("NEPA") when it approved leases and drilling permits for the mineral estate underlying the property of the trustee for the Paul B. Hayes Family Trust. The district court concluded that the Bureau of Indian Affairs ("BIA") had failed to comply with NEPA. It also denied a motion by the Osage Minerals Council ("OMC"), an independent agency of the Osage Nation, to dismiss for failure to join a necessary and indispensable party. While OMC's appeal was pending, the BIA retroactively approved the leases based on new NEPA analysis. Because this later approval superseded the agency action challenged below, we dismiss this appeal as moot and vacate the stated orders of the district court.

### I

The Osage Reservation was established in 1872 and originally comprised all of the land now in Osage County, Oklahoma. See Act of June 5, 1872, ch. 310, 17 Stat. 228. In 1906, Congress allotted the Reservation to individual tribal members. Act of June 28, 1906, ch. 3572, § 2, 34 Stat. 539, 540-43. The mineral estate underlying those tracts, however, was not transferred to individual ownership. Id. § 3, 34 Stat. at 543-44. Instead, Congress severed the subsurface mineral estate (the "Osage Mineral Estate") from the surface estate. Id. § 3, 34 Stat. at 544. Decisions regarding the Osage Mineral Estate are made by OMC. Const. of the Osage Nation, art. XV, § 4, https://www.osagenation-nsn.gov/sites/

may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

default/files/library/ConstitutionOfThe OsageNation.pdf. OMC leases and permits must be approved by the Secretary of the Interior. § 3, 34 Stat. at 543-44; Act of Oct. 21, 1978, Pub. L. No. 95-496, § 2, 92 Stat. 1660. In 1979, the BIA prepared an Environmental Assessment ("EA"), which concluded that Osage Mineral Estate leasing would have no significant impact on the environment. See 25 C.F.R. § 226.2(c) (requiring evaluation of environmental impact of Osage Mineral Estate leasing).

OMC entered into two leases with Chaparral Energy in 2012 and 2013 for portions of the Osage Mineral Estate underlying plaintiff's property.[1] After determining that its approval fell into the NEPA categorical exception for approval of mineral-lease adjustments and transfers, the BIA approved the leases. See 40 C.F.R. § 1508.4 (explaining that certain categories of actions may be categorically excluded from NEPA's requirements). Shortly thereafter, the BIA approved two related drilling permits without preparing a new NEPA analysis. It concluded the permits were covered under the 1979 EA.

In July 2014, the BIA sent a letter to all lessees of the Osage Mineral Estate announcing that it would no longer rely on the 1979 EA. It instructed anyone seeking the BIA's approval of leases and drilling permits after August 12, 2014, to submit a draft EA of the proposed actions for agency review.

One month later, the trustee filed suit against Chaparral, the United States, the Department of the Interior, and the BIA. He sought a declaration that the leases and permits described above were void because the BIA failed to comply with NEPA. Plaintiff also brought a trespass claim against Chaparral, alleging that the company had no right to use his surface property because the leases and permits were invalid. OMC moved to intervene for the limited purpose of seeking dismissal for failure to join a necessary and indispensable party. Granting OMC's motion to intervene, the district court denied its motion to dismiss and declared that the BIA's approval of the leases and permits violated NEPA. It certified its order as final and appealable.

OMC timely appealed. While this appeal was pending, the BIA retroactively approved the leases between OMC and Chaparral and their subsequent assignment to a different company that is not a party to this litigation. In reapproving the leases, the BIA relied on new NEPA analysis. Consistent with the July 2014 letter announcing that the agency would no longer rely on the 1979 EA, in November 2014 the BIA published a new Programmatic Environmental Assessment for Leasing Activities in Osage County, Oklahoma, in which it found that such leasing would have no significant impact on the environment. In April 2015, the BIA issued another Programmatic Environmental Assessment analyzing operations to maintain or modify existing wells. Plaintiff has challenged the BIA's decision to retroactively approve the leases in a separate action, which is currently pending before the U.S. District Court for the Northern District of Oklahoma. See Compl., Hayes v. Jewell, No. 16-cv-615-JED-FHM (N.D. Okla. Sept. 30, 2016). Both OMC and the government argue that this appeal is now moot.

## II

"[T]he existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction." Rio Grande Silvery Minnow v. Bureau of Reclamation,

---

1. The district court referenced only the 2013 lease in its order. However, the record suggests that two leases were at issue. This factual ambiguity is immaterial to our disposition.

601 F.3d 1096, 1109 (10th Cir. 2010) (quotation omitted). A case becomes moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." Already, LLC v. Nike, Inc., 568 U.S. 85, 91, 133 S.Ct. 721, 184 L.Ed.2d 553 (2013) (quotation omitted). In assessing whether subsequent events have mooted an appeal and thus deprived the courts of jurisdiction, "[t]he crucial question is whether granting a present determination of the issues offered will have some effect in the real world." Rio Grande Silvery Minnow, 601 F.3d at 1110 (quotation omitted).

■ We conclude that the BIA's new NEPA analysis mooted this appeal "[b]y eliminating the issues upon which this case is based." Wyoming v. U.S. Dep't of Agric., 414 F.3d 1207, 1212 (10th Cir. 2005). Plaintiff challenges the sufficiency of the environmental analysis that the BIA used to approve OMC's leases with Chaparral and the related drilling permits. However, during the pendency of this appeal, the BIA retroactively approved the leases and their assignment to a different company based on a new NEPA analysis. The original drilling permits have expired. Moreover, the agency has disclaimed further use of the 1979 EA and announced that new NEPA analyses will be required for any future leases and permits for the Osage Mineral Estate. Thus, "any determination we might make as to the procedural foundations of the old [lease and permit approvals] would be wholly without effect in the real wor[l]d ... because the analytical and procedural aspects of the [old approvals] have been superseded by the new analysis and procedure underlying the new [approvals]." Wyoming v. U.S. Dep't of Interior, 674 F.3d 1220, 1230 (10th Cir. 2012) (quotation omitted).

To the contrary, plaintiff argues that this appeal is live because it specifically concerns the non-joinder of an indispensable party rather than the merits of the district court's NEPA ruling. This is a distinction without a difference. The leases and drilling permit approvals adjudicated below are no longer operative. Therefore, any decision we make regarding the district court's refusal to dismiss would not have a tangible effect on plaintiff's claims. Plaintiff also argues that the BIA has not taken any remedial action regarding the drilling permits invalidated by the district court. Those permits have expired regardless of the result of this appeal.[2] Finally, plaintiff contends that his trespass claim against Chaparral remains and renders this appeal justiciable. But plaintiff's trespass claim was explicitly based on deficiencies in the prior NEPA analysis, which he alleged made the leases invalid. Because that NEPA analysis has now been superseded, the trespass claim is also moot.[3]

■ This appeal does not fall into either of the two exceptions to our general mootness rule. An exception for issues "capable of repetition, yet evading review" applies if "(1) the duration of the challenged action is

2. At oral argument, plaintiff appeared to argue for the first time that this case is live due to the operation of a well on his property after the permit had expired. But plaintiff did not raise this argument in his brief, and thus the issue is waived. See United States v. Rivera-Nevarez, 418 F.3d 1104, 1112 n.12 (10th Cir. 2005) ("[I]ssues raised for the first time at oral argument are waived."). To the extent plaintiff argues that this appeal is live because the BIA granted a different drilling permit pursuant to the invalid leases, that claim is waived because he did not challenge that permit below. See Schrock v. Wyeth, Inc., 727 F.3d 1273, 1284 (10th Cir. 2013).

3. We note in his second lawsuit, which remains pending, plaintiff has asserted a trespass claim based on the alleged invalidity of the leases under the new NEPA analysis.

too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again." Chihuahuan Grasslands All. v. Kempthorne, 545 F.3d 884, 892 (10th Cir. 2008) (quotation and alterations omitted). We conclude that the first prong is not satisfied. Although the NEPA analysis in this case was superseded prior to the completion of this litigation, there is nothing inherent "in the nature or structure" of such analyses that make them "necessarily of short duration." U.S. Dep't of Interior, 674 F.3d at 1229.

■ We thus ask whether the voluntary cessation exception is applicable. Voluntary termination of illegal conduct moots a case only if "there is no reasonable expectation that the alleged violation will recur, and ... interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." Cty. of Los Angeles v. Davis, 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979) (quotation and alteration omitted). The party arguing that voluntary cessation has mooted a case "bears the heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again." Rio Grande Silvery Minnow, 601 F.3d at 1116 (quotation and alteration omitted). Yet we have held that "withdrawal or alteration of administrative policies" can satisfy this test. Id. at 1117 (quotation and alteration omitted). The record reveals no reasonable expectation that the BIA will rely on its prior NEPA analyses for future leasing or drilling decisions concerning the Osage Mineral Estate. Accordingly, the voluntary cessation doctrine does not apply.

■ "When a case becomes moot pending appeal, the general practice is to vacate the judgment below and remand with directions to dismiss." U.S. Dep't of Agric.,

414 F.3d at 1213. There is an exception to this general rule for cases in which "mootness is a result of a voluntary act of a nonprevailing party." Id. But that exception does not apply if the party whose action mooted a case "is not the party seeking relief from the judgment below." Id. (quotation omitted). In this case, the BIA's actions rendered the controversy moot but OMC, an intervenor, appealed. For this reason, we reject plaintiff's contention that OMC's motion to dismiss is an "attempt[ ] to manipulate the courts to obtain the relief it was not able to win in the judicial system." Id. We are not persuaded by plaintiff's argument that the public interest would be served by allowing the district court's rulings to stand as persuasive authority. Because vacated opinions "remain on the books ... albeit without any preclusive effect, future courts and litigants will be able to consult [the district court's] reasoning." Rio Grande Silvery Minnow, 601 F.3d at 1133 (quotation and alteration omitted).

### III

For the foregoing reasons, we **GRANT** OMC's motion to dismiss and **REMAND** to the district court with instructions to **VACATE** its orders of March 23, 2016, and March 29, 2016.